C. LAWRENCE LEGGETT, Superintendent of the Division of Insurance, Department of Business and Administration, State of Missouri, Plaintiff, Respondent, v. GENERAL INDEMNITY EXCHANGE and GENERAL SERVICE CORPORATION, Attorney in Fact for General Indemnity Exchange, Defendants, Appellants, T. WALTER HARDY and J. W. BRIGHAM, Intervenors, Respondents, P. J. McGUIRE, Intervenor, Appellant.

C. LAWRENCE LEGGETT, Superintendent of the Division of Insurance, Department of Business and Administration, State of Missouri, Plaintiff, Respondent, v. ST. LOUIS CASUALTY & SURETY COMPANY, a Corporation, Defendant, Appellant, T. WALTER HARDY and J. W. BRIGHAM, Intervenors, Respondents, P. J. McGUIRE, Intervenor, Appellant, Nos. 42463 and 42464—250 S. W. (2d) 710.

Division One, July 14, 1952.

274

*Keyes & Bushman, Lewis, Rice, Tucker, Allen & Chubb, Lyle M. Allen* and *Robert T. Burch* for appellants.

*Hendren & Andräe, John H. Hendren, Henry Andrae* and *James Meredith* for respondent C. Lawrence Leggett, Superintendent of the Division of Insurance, Department of Business and Administration, State of Missouri.

*J. Porter Henry,* for respondents T. Walter Hardy and J. W. Brigham; *Green, Hennings, Henry & Evans* of counsel.

LOZIER, C.—These appeals are from two judgments on the pleadings ordering dissolution of a reciprocal insurance exchange and an insurance corporation for cessation of business for a period of one year. Plaintiff-respondent is the superintendent of the division of insurance, department of business administration (herein called the superintendent). As the superintendent is a "state officer," the appeals are properly here. Sec. 3, Art. V, Mo. Cons., 2 V.A.M.S., p. 31; Klaber v. O'Malley, (Mo.) 90 S.W. 2d 396. The issue is the propriety of the sustention of the motions for judgment on the pleadings.

Defendant-appellant General Indemnity Exchange (herein called Exchange) is a reciprocal insurance exchange organized in 1917 and existing under what are now Secs. 375.790-375.920 RSMo 1949, V.A.M.S. (Subsequent statutory references are to RSMo 1949, V.A.M.S., unless otherwise indicated.) Defendant-appellant General Service Corporation (herein called General Service) is a business corporation organized and existing under what is now Chap. 351. Defendant-appellant St. Louis Casualty & Surety Company (herein called Casualty) is an insurance corporation organized in 1944 and existing under what is now Chap. 379.

The superintendent's actions were instituted, against Exchange and General Service in one case and against Casualty in the other, under Sec. 375.560. That section is in part: "Whenever it shall appear to the superintendent * * * (1) That the capital stock or guarantee fund of any company heretofore or hereafter incorporated or organized under the laws of this state *doing* in this state *any kind of an insurance business* is impaired; or (2) * * *; (9) That such company has *ceased to transact the business of insurance* for a period of one year, said superintendent may institute a suit or proceedings * * * to enjoin said company from further prosecution of its business, either temporarily or perpetually, [712]

or for a judgment dissolving such corporation *or for both*; and *after* the entry of such decree or judgment, the court upon the motion of the superintendent \* \* \* *may* order the *liquidation, settlement and winding up of the affairs of such company* or the rehabilitation of such company \* \* \*, *together* with such *other* decrees and orders in connection therewith as the court shall deem advisable." Sec. 375.120 prohibits action by any person other than the superintendent "for the *winding up or dissolution* of any insurance company." (Our italics.)

The superintendent's petitions, respectively, alleged: his official position and right to maintain the actions; Exchange's organization and existence; that Exchange was licensed to operate as a reciprocal or inter-insurance exchange by the superintendent continuously from 1918 until March 1, 1945; General Service's organization and existence; that General Service served as attorney in fact to enable Exchange's subscribers to execute and exchange inter-indemnity agreements among themselves under what is now Sec. 375.800; that since March 1, 1945, Exchange had not been licensed by the superintendent to transact business and its subscribers had not been authorized to exchange inter-indemnity contracts through General Service; Casualty's organization and existence for the purpose of transacting the insurance business named in what is now Sec. 379.010; the superintendent's continuous licensing of Casualty to carry on such business between January 11, 1945, and March 1, 1949; that Casualty had not been so licensed after March 1, 1949; and that from information in his office, including statements filed by the three defendants, Exchange and its subscribers and Casualty had ceased to transact the business of insurance for a period of one year and more next prior to the filing of the petitions. The superintendent asked that Exchange and Casualty be restrained from further prosecution of their respective businesses and from disposing of properties or assets; that Exchange and Casualty be dissolved; and that General Service, as attorney in fact for Exchange, be restrained "from taking any action to sell, transfer or otherwise dispose of any property or assets held by General Service Corporation for the benefit of the subscribers of General Indemnity Exchange."

Defendants' respective answers specifically admitted: the superintendent's official position and his right to bring the actions; Exchange's, General Service's and Casualty's organization and existence; that General Service served as Exchange's attorney in fact; that Exchange had not been licensed since March 1, 1945, and Casualty not since March 1, 1949; and that both Exchange (and its subscribers) and Casualty had ceased to transact the business of insurance for a period of one year and more next prior to the filing of the petitions. (Thus, defendants' answers expressly admitted all of the factual allegations of the superintendent's petitions.)

The answers then pleaded a reinsurance agreement between Exchange, acting through General Service, and Casualty in 1945, whereby Casualty assumed liabilities under Exchange's outstanding policies and agreed to hold Exchange harmless; that such agreement was approved by the superintendent under what is now Sec. 376.520; that Casualty had fully performed its obligations; that all claims under such policies had been settled; that other possible claims were barred by limitations; and that neither Exchange nor Casualty had any liability or obligation of any kind or character to any of Exchange's subscribers or former subscribers under any of such policies.

The answers then alleged that, when Casualty was organized, its entire capital stock was issued to General Service as attorney in fact in exchange for Exchange's assets "by and with the consent of P. J. McGuire who, at the time of such exchange and at all times since then and now, was and is the only person who had, or now has, any interest in the assets or property of defendant General Indemnity Exchange"; and that "at all times since its organization and now, the said P. J. McGuire was and is the owner and holder of all the issued and outstanding [713] capital stock of defendant General Service Corporation."

The answers further alleged that, subject to the approval of the trial court, defendants "proposed to adopt and consummate a plan under and pursuant to which the said P. J. McGuire will transfer and assign to defendant General Service Corporation, as a contribution to the capital of said corporation, all his right, title and interest in and to the capital stock of said St. Louis Casualty & Surety Company, after which and in pursuance of said plan, said St. Louis Casualty & Surety Company shall be liquidated and dissolved and its assets transferred to defendant General Service Corporation in complete cancellation and liquidation of all the capital stock of said St. Louis Casualty & Surety Company; that such proposed plan has been discussed informally with the Bureau of Internal Revenue and that a written request is being made to the Commissioner of Internal Revenue for a formal ruling to the effect that such plan will qualify under the provisions of Sec. 112(b)(6) of the Internal Revenue Code [26 U.S.C.A.] and that defendants are informed and believe that such ruling can be obtained in approximately thirty days."

Defendants then alleged that orders of dissolution of Exchange and Casualty at that time would be prejudicial to the interests of General Service and Casualty and Casualty's "stockholder"; but if General Service and Casualty were permitted to adopt and consummate the plan, and if Exchange and Casualty were ordered dissolved only in conjunction with and pursuant to the plan, such dissolution would not be prejudicial to either General Service or Casualty ("and

its stockholder'') and the delay incident thereto would not be detrimental to the superintendent or to any other person whomsoever.

Defendants stated that they would consent to continuance of the temporary injunction pending the submission to and approval by the trial court of their plan. However, they asked modification of the temporary injunction so as to permit General Service and Casualty to take whatever corporate action might be necessary to adopt and submit to the court a plan qualifying under Sec. 112(b)(6). They asked postponement of further action in the proceedings to the extent necessary for General Service and Casualty to secure a ruling from the commissioner of internal revenue, and to prepare, adopt and submit to the trial court an ''appropriate'' plan for Casualty's liquidation and dissolution and for the transfer of its assets, subject to its liabilities, to General Service.

T. Walter Hardy and J. W. Brigham filed joint intervening petitions as officials of two corporate subscribers and policyholders of Exchange and as a ''Subscribers and Policyholders Protective Committee to assert their rights and the rights of all others similarly situated.'' They admitted the factual allegations of the superintendent's petitions, specifically denied the allegations of defendants' answers as to the nonexistence of claims and creditors and as to McGuire's sole beneficial ownership of Casualty's stock. They asserted that Exchange's assets were the property of, and that General Service held same as trustee for, Exchange's subscribers and policyholders; that the subscribers and policyholders, acting through General Service, had organized Casualty; that Exchange's assets had been transferred to Casualty in exchange and in consideration for Casualty's stock; that the subscribers and policyholders were the beneficial owners of the stock; that the stock had been issued to General Service ''as attorney in fact for said subscribers and policyholders''; and that, upon Casualty's dissolution, the subscribers and policyholders would be entitled to Casualty's assets and ''no purpose would be served in General Service Corporation continuing to hold said stock as attorney in fact and trustee for the subscribers and policyholders, or in receiving any distribution''; that General Service's and McGuire's claims of ownership violated their trust as trustee for the subscribers and policyholders. They joined in the superintendent's prayers for orders of dissolution, asked that the subscribers and policyholders be decreed owners of Casualty's stock, [714] that General Service be divested of the stock as trustee and that same be vested in the subscribers and policyholders as beneficial owners.

P. J. McGuire then filed intervening petitions. He admitted all the allegations of defendants' answers and such allegations of the superintendent's petitions as were not denied or otherwise controverted by defendants' answers. (Thus, he expressly admitted all of the factual allegations of the superintendent's petitions.)

He then alleged : that he became the owner of Exchange's net assets under written assignments from all of Exchange's subscribers and policyholders; that thereby he became the sole owner of Casualty's stock and that neither Hardy nor Brigham nor any other person had any interest in either Exchange's assets or Casualty's stock; that when Exchange's assets were exchanged for the stock, the stock "was issued to General Service Corporation as attorney in fact for this intervenor, who was and is assignee of all the subscribers"; that General Service "made such transfer with the consent and at the direction of this intervenor as sole stockholder of General Service Corporation and as sole beneficial owner of all of" Exchange's net assets; and that he, "as such assignee and as such sole stockholder is now the sole beneficial owner of" Casualty's capital stock and Exchange's assets; and that limitations had run upon any contest as to the validity of the assignments. He asked to be declared owner of Casualty's stock and Exchange's assets and joined in defendants' request for delay in entering decrees of dissolution.

Without filing a reply, the superintendent filed motions for judgment on the pleadings. His grounds were : defendants had admitted and confessed the factual allegations of his petitions and the facts set up in defendants' answers in avoidance of immediate orders of dissolution were insufficient in law to constitute a defense.

At the hearing, the trial court refused to hear defendants' and McGuire's proffered evidence as to: nonexistence of claims, Hardy's and Brigham's right to represent other subscribers and McGuire's claim of ownership of Exchange's assets and Casualty's stock.

Upon the pleadings, the trial court found for the superintendent and against the defendants and that the superintendent was entitled to the relief asked. The judgments, following the superintendent's prayers: enjoined General Service from disposing of Exchange's assets; permanently restrained Exchange and Casualty from further transaction of the insurance business; ordered Exchange's and Casualty's dissolution because they had ceased to transact the business of insurance for a period of one year and more next prior to the filing of the petitions; vested the assets of both Exchange and Casualty in the superintendent in fee simple to hold and dispose of, by court order, for the use and benefit of creditors, policyholders and "such other persons as may be interested in such assets"; and directed the superintendent to inventory the assets and file a copy thereof. (Appellants concede that "the language of the judgments follows substantially the provisions of Sec. 375.560, and was a necessary concomitant of the judgments of dissolution.")

Exchange, Casualty and McGuire appealed. Respondents Hardy and Brigham have filed briefs in support of the superintendent's position.

Did the trial court err in sustaining the superintendent's motions for judgment on the pleadings? As stated, the factual allegations of the superintendent's petitions were admitted in all the other pleadings. The superintendent's position is that his motions were properly sustained in that the pleadings of all other parties conceded that both Exchange and Casualty had ceased to transact the business of insurance for a period of one year and more next prior to the filing of the petitions. (The parties submitted their respective cases also upon another factual assumption implied in the pleadings, viz., that Casualty "has no intention of ever again engaging in the business of insurance.") He asserts that the statutory procedure for dissolution is exclusive, citing: State ex inf. McKittrick ex·rel. Maloney v. Fidelity Assur. Assn., 352 Mo. 725, [715] 179 S. W. 2d 67; State ex rel. Mo. State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S.W. 2d 174; State ex rel. St. Louis Mutual Life Ins. Co. v. Mulloy, 330 Mo. 951, 52 S. W. 2d 469. He contends that the dissolution orders were necessary prior to determination of claims of any kind; that, even though it may be ultimately determined that there are no outstanding policies, no claims and no creditors, and that McGuire is the beneficial owner, such facts, as a matter of law, constitute no defense to his causes of action under the statutes; and that, conceding, for purposes of the motions, the verity of appellants' allegations as to these matters, those facts were not well pleaded.

The motions admitted only facts well pleaded by the other parties. State ex rel. Russell v. State Highway Commission, 328 Mo. 942, 42 S.W. 2d 196, 197; Baker v. Lamar, (Mo.) 140 S.W. 2d 31, 35. Where an answer, after admitting the factual allegations of the petition, sets up an affirmative defense to plaintiff's claim, plaintiff's motion for judgment on the pleadings cannot be sustained if the answer's new matter constitutes a valid defense. 71 C. J. S., Pleading, Sec. 429, p. 874. See State ex inf. Shartel v. Missouri Utilities Co., 331 Mo. 337, 53 S.W. 2d 394. (And defendant's motion should be sustained only if that defense is sufficient in law. McIntosh v. Foulke, 360 Mo. 481, 228 S.W. 2d 757, 761.) "But a judgment in favor of the plaintiff is proper where the defendant's answer admits every material averment in the complaint and fails to set up any defense which, if established, would defeat the plaintiff's claim." 41 Am. Jur., Pleading, Sec. 337, p. 522. "The real position of the party moving for judgment is that if the allegations of the opposite party be true in fact, they are nevertheless insufficient in law." Cammann v. Edwards, 340 Mo. 1, 100 S.W. 2d 846, 851.

Appellants insist that the new matters (McGuire's beneficial ownership and the nonexistence of outstanding policies, claims and creditors) were well pleaded in that they constituted a defense to the superintendent's suits for the dissolutions. (We need not rule whether, in view of the denial of the new matters in the Hardy-Brigham plead-

ings, the truth of these new matters was, for the motions' purposes, admitted by the superintendent's motions. As did the superintendent and appellants in their submissions here, we shall assume, without deciding, that the motions admitted, for purposes of the motions, McGuire's beneficial ownership and the nonexistence of outstanding policies, claims and creditors.)

Did appellants, after having admitted all of the factual allegations of the superintendent's petitions authorizing the dissolution orders, plead facts which made erroneous the entry of the dissolution orders? Appellants advance several reasons for their contention that the new matters constituted a defense.

Appellants first say that Sec. 375.560 is ambiguous; that subsection (9) is inconsistent with the rest of the section and void; that the first clause of this subsection ("that such company has *ceased* to transact the business of insurance for a period of one year,") means only a company referred to in subsection (1), viz., one *"doing * * * any kind of an insurance business"*; that subsection (9) "can apply only to a company which is doing an insurance business and which at the same time has not been doing an insurance business for a period of one year."

Neither Price v. St. Louis Mutual Insurance Co., 3 Mo. App. 262, nor Streit v. Citizens Fire Ins. Co., 29 N. J. Eq. 21, support appellants' argument that cessation of business "should never be the basis of a suit under Sec. 375.560," because of the necessity of alleging and proving in the same suit, both "doing business" and "having ceased to do business." The very statement of this argument shows its fallacy. The General Assembly expressly made mere cessation of business an additional ground for injunction or dissolution. Sec. 5941, p. 66, 1933-34 Laws, now Sec. 375.560. This is the only change made in the section since 1879. Even if the section's provisions were ambiguous (which they are not), courts do not declare void for uncertainty any statute [716] susceptible of any reasonable construction which will sustain it. State ex rel. Reorganized School Dist. No. 4 of Jackson County v. Holmes, 360 Mo. 904, 231 S.W. 2d 185.

Appellants next urge that subparagraphs (1)-(8) of Sec. 375.560 authorize dissolution upon "conditions which would make continued operation of an insurance company hazardous to the policyholders, creditors and the general public," whereas, the condition in subparagraph (9) "would or would not make the continued existence of the company hazardous to policyholders, creditors and the general public, depending upon the surrounding circumstances"; that here "there could be no public interest in whether or not the company continued in existence more than one year after it had ceased to transact the business of insurance."

However, the General Assembly has made no such distinction. In Sec. 375.560, there is no suggestion that the legislative intent was

that there is no public interest in the dissolution of a solvent insurance organization for cessation of business for more than a year. In State ex inf. McKittrick ex rel. Maloney v. Fidelity Assur. Assn., 352 Mo. 725, 179 S.W. 2d 67, 69, we pointed out that the superintendent was entitled to file a suit for either injunction or dissolution or both, against a domestic insurance company for "any one of the nine stated alternatives." And in State ex rel. Missouri State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S.W. 2d 174, 177, we said that the original insurance code "and amendments thereto indicate an intention to regulate the business from beginning to end, thereby protecting individual and public interests."

Appellants' cited cases do not support their position. True, in one, Hentschel v. Fidelity & Deposit Co. of Maryland, 87 F. 2d 833, decided upon the pleadings, "the administration of the assets of the company remaining after dissolution" was said not to be "a matter of public concern." However, the court suggested that determination of that matter should be made by the superintendent who had consented to a circuit court appointment of a liquidating trustee. The holding was that "under the peculiar and unusual circumstances," the circuit court had jurisdiction. We rule that there was a public interest in the dissolutions in the instant case.

In view of the clear, unequivocal language of Sec. 375.560, authorizing entry of an order of dissolution for cessation of business for more than a year (irrespective of the existence or nonexistence of claims or creditors and irrespective of ownership of net assets), we hold that the new matters did not constitute a valid defense and, therefore, were not well pleaded. It follows that the motions for judgment on the pleadings were properly sustained unless the judgments were erroneous for other reasons urged by appellants and hereinafter considered.

█ Appellants contend that, even if Sec. 375.560 is applicable, the trial court abused its discretion in not hearing evidence upon the disputed factual matters before entering the dissolution orders. Asserting that the trial court had the power to either enjoin *or* dissolve *or* both, appellants say it should have *only* enjoined and then tried the issue of ownership of Exchange's assets and Casualty's stock.

Whatever discretion a trial court might have to postpone entry of an order of dissolution of a company which might resume business is not for decision. Here, both Exchange and Casualty had ceased to do business for over a year; and neither intends to resume business. Under such circumstances, the trial court could not properly have postponed the operation of the procedural provisions of the insurance code for the winding up of Exchange's and Casualty's affairs. The code specifically provides *first* for dissolution and transfer of title to the superintendent, *thereafter,* for settlement of claims and *then* distribution of the remaining assets "to those entitled thereto." Secs.

375.560-375.760. We hold that the trial court did not err in refusing to determine the matters of claims and ownership before entering the dissolution orders.

It follows that the trial court properly rejected evidence upon the superintendent's motions for judgment on the pleadings and [717] ruled the issues of law upon the pleadings alone. Ralph D' Oench Co. v. St. Louis County Cleaning and Dyeing Co., 358 Mo. 1072, 218 S. W. 2d 609.

■ Nor is there merit in appellants' contentions that "seizure" of "McGuire's property" and vesting title to Exchange's assets and Casualty's stock in the superintendent without a trial was not due process under Sec. 10, Art. I, Mo. Cons., and the Fourteenth Amendment, U. S. Cons. The judgments here, being on the pleadings, determined only the questions of law upon which appellants have had their "day in court," viz., that the trial court had power to dissolve Exchange and Casualty and that in dissolving them there was no abuse of discretion. Appellants will have an opportunity to be heard upon the factual questions—whether there are outstanding policies or claims and who owns the net assets. McGuire will have "his day in court" upon the ownership issue. And, in the event he establishes his claim as sole owner of the stock and assets, appellants may then submit their alleged tax-saving plan which, apparently, hinges upon McGuire's sole ownership, for the consideration of the superintendent and the trial court—all as appellants proposed in their respective pleadings. (In his briefs, the superintendent states that he will join in such a submission to the trial court in the event it is finally determined, under the procedure prescribed by the insurance code, that there are no outstanding claims and that McGuire is the beneficial owner of the net assets.)

Appellants' cited cases as to denial of due process are inapplicable. In Coe v. Armour Fertilizer Works, 237 U. S. 413, 35 S. Ct. 625, 59 L. Ed. 1027, the stockholder, against whose property an execution was issued to satisfy a judgment against the corporation, had no notice or opportunity to be heard and interpose his defense before the levy. In Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, there had been no prior attachment of the land of the nonresident defendant sold in execution of a judgment in personam rendered without personal service. In State ex rel. Chicago Great Western R. Co. v. Public Service Commission, 330 Mo. 729, 51 S.W. 2d 73, and City of St. Louis v. Mo. Pac. Ry. Co., 278 Mo. 205, 211 S. W. 671, the party invoking due process had "his day in court."

Under the insurance code of this state, Exchange was organized, existed and transacted the insurance business. Under that code, General Service qualifiied as Exchange's attorney in fact and acted as such. Under that code, Casualty was incorporated, existed and transacted the insurance business. Under that code, McGuire (for purposes of

this opinion) acquired ownership of Exchange's assets and Casualty's stock. That code prescribes dissolution upon certain conditions and the procedure for ascertaining the existence and settlement of claims and of the disposition of net assets. Appellants are bound by such statutory procedure. They may not now disregard some of the provisions of that code and insist that dissolution be postponed until the court has determined certain factual disputed matters which, under the statutes, can only be determined after orders of dissolution are entered.

Compare In Re Lawyers Title & Guaranty Co., 254 App. Div. 491, 5 N. Y. S. 2d 484, cited by appellants, where a corporate stockholder was not permitted to force its own plan of reorganization over the opposition of the superintendent of insurance. And contrast Hentschel v. Fidelity & Deposit Co. of Maryland, 87 F. 2d 833, and Second National Bank of Nashua v. Old Guaranty Savings Bank of Nashua, 84 N. H. 342, 150 A. 737, both cited by appellants, wherein the superintendent of insurance and the bank commissioner, respectively, approved plans submitted by the corporations affected.

The judgments are affirmed. *Van Osdol* and *Coil, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.

*Conkling, Hollingsworth* and *Dalton, JJ.,* concur; [718] *Hyde, P. J.,* concurs in separate opinion.

HYDE, P. J. (concurring).—I concur in the rulings made herein as applied to the facts of this case and think no other result could have been reached on what was before the Court. However, I do not want to be committed to the view that if there were no issues as to ownership of assets, no claims and no possible liabilities, then a judgment of dissolution would be required on the sole ground of failure to transact business for a period of one year. It seems to me that there might be circumstances under which even though that had occurred, the company should not necessarily be dissolved. (For example, it might be proper to allow it to commence business again.) I think the result herein is correct, not solely on the basis of what was before the trial court on the motions for judgment on the pleadings between some of the parties, but because intervenors' pleadings showed there was a dispute as to ownership of assets which could only be determined in a dissolution proceeding; and also because it was not desired that there be any resumption of the insurance business by the companies involved herein. When the intervenors were permitted to come in, they became just as much parties to the suit as anyone else. (See Sec. 507.090 RSMo 1949, VAMS; 39 Am. Jur. 928, Sec. 55; 67 C. J. S. 1009, Sec's. 69-70.) They were permitted to and did assert a claim to the assets involved and I do not see how any admissions by another

party or by all other parties (by motion for judgment on the pleadings or otherwise) could take that fact out of the case. Certainly, after the intervention, there was a controversy over who owned the assets of an insurance company that was permanently going out of business; and, therefore, the only action the court could properly take was to enter a judgment of dissolution and proceed to determine, in accordance with the prescribed statutory procedure, the question of who was entitled to distribution of these assets.