Jay ANGOFF, Director Department of Insurance, Respondent,

v.

AMERICAN FINANCIAL SECURITY LIFE INS. CO., Appellant.

Nos. WD 47661, WD 47662.

Missouri Court of Appeals, Western District.

Nov. 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied Feb. 22, 1994.

Robert Lewis Hawkins, Jefferson City, for appellant.

Elisabeth Ruth Sauer, Kansas City, for respondent.

Before TURNAGE, C.J., and FENNER and ELLIS, JJ.

TURNAGE, Chief Judge.

The Circuit Court of Cole County entered judgment placing American Financial Security Life Insurance Company (AFSLIC) into rehabilitation for operating in a hazardous condition because it wrote at excessive ratios of premiums to surplus, overstated its reinsurance credits and did not maintain the required amount of capital and surplus. AFSLIC appeals contending that it was not in a hazardous condition. Affirmed.

AFSLIC is a Missouri life insurance company which specializes in premium credit life and disability insurance for automobile financing contracts. The Missouri Department of Insurance (MDI) placed AFSLIC into Administrative Supervision in March, 1992, due to the large volume of premium which AFSLIC was writing. MDI also conducted an investigation which resulted in an Examination Report which was current as of September 30, 1992. The primary issue at trial was the condition of AFSLIC as of September 30, 1992.

The court referred this matter to a Master who held hearings and recommended that AFSLIC be placed into rehabilitation. The court approved that report and ordered AFSLIC into rehabilitation. The dispute as

to the condition of AFSLIC as of September 30, 1992, revolves around the amount of reinsurance credits to which AFSLIC was entitled. AFSLIC made two contracts for reinsurance for 1992. The first was with American Trend Life and covered the first three months of 1992. The second was with Lloyds of London and covered the last nine months of 1992. The portion of liability that an insurance company has covered by reinsurance is actually an asset to that company. AFSLIC sought to use its reinsurance credits to meet its reserve requirements.

■ Missouri law required AFSLIC to have capital of $1,300,000 and surplus of $600,000. The Lloyds treaty required Lloyds to pay losses AFSLIC incurred over 45% of unearned premiums. AFSLIC took a reserve credit of approximately 55% of unearned premiums less some required reductions in determining its reinsurance credit for September 30, 1992. Initially MDI approved AFSLIC's accounting methodology and allowed this credit of approximately $8,000,000 for nine months of reinsurance coverage from January 1, 1992, through September 30, 1992. However, in a later examination report AFSLIC was only allowed a credit of $800,000, which represented 4.4% of unearned premiums. MDI based this new figure on an estimation of what Lloyds would actually pay under the treaty instead of Lloyds' potential liability. This difference resulted in a finding that AFSLIC had a negative capital and surplus of $5,423,852 and was operating in a hazardous condition on September 30, 1992. AFSLIC argues it was entitled to nine months worth of reinsurance credits on its September 30, 1992, financial statement through either six months of Lloyds and three months of Trend reinsurance or nine months worth of Lloyds reinsurance. However, there was substantial evidence from which the trial court could find AFSLIC should have been placed into rehabilitation because it had no reinsurance for the first three months of 1992 from which it acquired reinsurance credits. The Trend reinsurance was canceled and AFSLIC did not take any reinsurance credits from that treaty. The trial court relied on the actual Lloyds treaty which stated a coverage period from April 1 to December 31, 1992, in finding

that the Lloyds reinsurance treaty did not cover the first three months of 1992. The court found that, even if the higher percentage was used in calculating the reinsurance credits, AFSLIC was operating in a hazardous condition because with only six months reinsurance the capital and reserves were insufficient to meet the anticipated losses.

■ AFSLIC contends that, with MDI's approval, it made an agreement with Lloyds to amend the Lloyds treaty so that it would provide coverage for the first nine months of 1992. However, the treaty introduced in evidence clearly showed the period covered was April 1 to December 31, 1992. This was the only evidence which showed the period covered by the Lloyds treaty. Thus, the court based its finding as to the period covered on the only evidence presented. Consequently, the trial court's decision finding that AFSLIC was entitled to only six months worth of reinsurance credit on its September 30, 1992, financial statement was supported by the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

■ AFSLIC argues alternatively that MDI should be equitably estopped from allowing reinsurance credits for only six of the first nine months of 1992. In MDI's financial examination report it allowed AFSLIC nine months worth of credits for the Lloyds policy. However, as discussed above, the trial court only allowed six months worth of reinsurance credits for the Lloyds' treaty. AFSLIC asserts MDI should be estopped from refusing to give nine months worth of reinsurance credit since MDI gave nine months worth of credit in its examination report.

AFSLIC's argument essentially attempts to create coverage under the Lloyds treaty for nine months when the treaty stated it covered only six of the first nine months of 1992. In *State ex inf. Voigts, ex rel. Mayor, Council and Citizens of Liberty v. City of Pleasant Valley*, 453 S.W.2d 700 (Mo.App. 1970), the court held that estoppel "may not be asserted for the creation of a right" and is "not to work a positive gain to a party." *Id.* at 706[16]. Accordingly, estoppel may not be

used to create coverage from the Lloyds treaty.

■ AFSLIC's final argument for receiving nine months worth of reinsurance credits is that under § 375.630.1, RSMo Supp.1992, the trial court was required to rely on MDI's examination report which allowed reinsurance credits for nine months.

Section 375.630.1(3) states that such an examination report raises:

A rebuttable presumption that the facts pertaining to the condition and affairs of the defendant as of the examination date are true as of the date of the hearing, if such report is as of a date not more than one hundred eighty days preceding the filing of the petition.

Whatever presumption arose from the examination report concerning the period which the Lloyds treaty covered was effectively rebutted by AFSLIC's introduction of the Lloyds treaty itself. The treaty states it covers the period from April 1, 1992, to December 31, 1992, and the trial court properly relied on this evidence.

Once it is determined that AFSLIC was only entitled to six months worth of reinsurance credits as of September 30, 1992, the amount of reinsurance credits was reduced from $8,274,000 to $5,000,000, or a reduction of over $3,000,000. AFSLIC contended it had capital and surplus of approximately $3,000,000, but the reduction in reinsurance credits offset the amount of capital and surplus claimed by AFSLIC and resulted in a balance of approximately zero. This was obviously below the minimum statutory combined capital and surplus of $1,900,000 which AFSLIC was required to maintain. Consequently, the trial court properly found that AFSLIC was operating in a hazardous condition.

■ AFSLIC's final point on appeal is that, even if it was only entitled to six months worth of reinsurance credits, the decision to place the company into rehabilitation was erroneous. First, AFSLIC argues that a less severe remedy was required since the trial court found AFSLIC was not as insolvent as MDI originally argued.

The trial court found that AFSLIC was operating in a hazardous condition as had the Director of the Department of Insurance. The Director is afforded discretion under § 375.1160, et seq. RSMo Supp.1992, in choosing what remedial measures to employ. The Director did not abuse his discretion in placing AFSLIC into rehabilitation.

Alternatively, AFSLIC argues the trial court infringed upon the roles and duties of the Director because it placed AFSLIC into rehabilitation after making different findings than MDI. Specifically, the trial court gave six months worth of credit instead of the nine months credit MDI had given.

AFSLIC's argument again misses the mark. The Director sought rehabilitation for AFSLIC for operating with excessive premiums to assets, overstating its reserve credits, and for failing to maintain the required amount of capital and surplus. The trial court found all these things to be true to some extent and additionally found the accounting methodology that AFSLIC used evidenced hazardous operating conditions. As stated above, the Director had discretion as to what remedial action to take and under the evidence he properly exercised his discretion.

■ AFSLIC has filed a motion with this court for an award of attorney's fees on appeal. The trial court had granted a similar request which covered the period through the end of the trial. AFSLIC filed a second motion in the trial court for attorney's fees to cover expenses incurred in pursuing after trial motions and this appeal. That request was denied. AFSLIC failed to appeal this decision and now contends that § 375.630.5, RSMo Supp.1992, entitles it to an award of post-trial attorney's fees from this court.

Section 375.630.5 provides in pertinent part:

Reasonable attorney's fees and other expenses incurred by any person on behalf of an insurer resisting any formal delinquency proceeding may be paid from the assets of the insurer ... but only after the trial and only if the person making the claim for such fees shows, and if the court finds, based on the record and evidence present-

ed at the trial that the board of directors of the insurer incurred such expenses (reasonably)....

Any finding or order awarding such attorney's fees and other expenses shall be appealable as a final judgment, but an appellate court reviewing such finding or order shall not accord any deference to the finding of fact or conclusion of law of the trial court.

The statute only provides for attorney's fees incurred for defense of the company at trial because attorney's fees are based on the "record and evidence at the trial." This is necessarily the trial record. There is no provision in the statute for an award of attorney's fees on appeal. The motion is denied.

The judgment is affirmed and the motion for attorney's fees is denied.

All concur.