**Jay ANGOFF, Director of Department of Insurance, Appellant,**

**v.**

**CASUALTY INDEMNITY EXCHANGE, Respondent,**

**and**

**CIE Service Corporation, Defendant.**

**No. WD 53415.**

Missouri Court of Appeals, Western District.

Dec. 9, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 1998.

Application for Transfer Denied March 24, 1998.

Mark W. Stahlhuth, Gen. Cnsl., Mo. Dept. of Ins., George A. (Alex) Bartlett, Jefferson City, for appellant.

Dale Doerhoff, Eugene G. Bushmann, Jefferson City, for respondent.

SPINDEN, Judge.

Jay Angoff, director of the Department of Insurance, appeals the circuit court's judgment to terminate the order of rehabilitation entered against Casualty Indemnity Exchange (CIE). Angoff also contests the circuit court's removing the special deputy appointed by Angoff as CIE's rehabilitator and restoring CIE Service Corporation as CIE's attorney-in-fact. We affirm.

CIE is a reciprocal insurance exchange governed by §§ 379.650–.800, RSMo 1994.[1] In *Yeats v. Dodson*, 345 Mo. 196, 127 S.W.2d 652, 655 (1939), the Supreme Court described the operation and function of a reciprocal insurance exchange:

> "A reciprocal or interinsurance exchange is a group or association of persons co-operating through an attorney in fact for the purpose of insuring themselves and each other. The attorney in fact issues the contracts to and for them. And he is the one who is held responsible for a compliance with the laws of the state so far as they relate to this character of insurance.... Under the facts and the law applicable to them, it is clear that a reciprocal or interinsurance exchange is something more than a partnership and something less than an insurance corporation, and falls within the classification of unincorporated companies." *In re Minnesota Ins. Underwriters*, D.C., 36 F.2d 371, 372 [(1929).] ... "[T]here must be an attorney in fact for the reason that under the plan of insurance in question all the business is done and transacted by an attorney in fact." [*Wysong v. Automobile Underwriters*, 204 Ind. 493, 184 N.E. 783, 786 (1933).]

Section 379.650 provides that individuals, partnerships or corporations may exchange reciprocal or interinsurance contracts among themselves or with others to insure risks other than death. The statutes authorize the subscribers to an exchange to authorize an attorney-in-fact to act for them in exchanging contracts of insurance, in filing an application for state license, and in filing annual statements of the exchange's financial condition with the director of insurance. Sections 379.660, 379.670, 379.730.1.

With the exception of specific enumerated sections, insurance exchanges are exempted from the application of all other insurance laws. Section 379.780 says:

> 1. Except as provided in this section, no law of this state relating to insurance shall apply to the exchange of indemnity contracts. When any other law is applicable, it shall be construed in accordance

1. All statutory references are to the 1994 Revised Statutes of Missouri.

with the fundamental nature of a reciprocal or interinsurance exchange. In the event of any conflict between such law and the provisions of this section of the provisions of sections 379.650 to 379.770, the latter shall prevail. The other law may, however, supplement or explain the provisions of this section and sections 379.650 to 379.770, and the laws herein made applicable to reciprocal or interinsurance exchanges.

2. The following laws shall be applicable to reciprocal or interinsurance exchanges: ·

(1) Chapter 148 wherein applicable to the taxation of insurance companies and associations;

(2) Chapter 374 [operations of the department of insurance] wherein applicable to insurers or insurance companies except wherein the provisions thereof are specifically or clearly applicable only to a stock or mutual insurer;

(3) Chapter 375 [including policy cancellation; unfair practices and claims settlement; supervision, rehabilitation and liquidation; audited financial reports; reinsurance; and investments] wherein applicable to insurers or insurance companies except wherein the provisions thereof are specifically or clearly applicable only to a stock or mutual insurer;

(4) Sections 379.098 [securities], 379.100 [receipt of deposits], 379.125 [reinsurance], 379.140 [full payment of policy], 379.203 [required provisions in automobile policy], 379.420 to 379.510 inclusive [casualty and surety rate regulation], and sections 379.650 to 379.790, inclusive.

The organization and operation of a reciprocal insurance exchange is not at all like that of an ordinary insurance company.

CIE began business in 1912 and authorized CIE Service Corporation to act as its attorney-in-fact in 1977. In 1992, it underwrote multiple lines of insurance in 16 states and earned insurance premiums of more than $33 million.

CIE's financial statement of December 31, 1992, reported a reserve deficit of $17,278,-140. This prompted Angoff to petition the circuit court on April 2, 1993, to order rehabilitation of CIE. CIE Service appeared on behalf of CIE and consented to an order of rehabilitation.

On April 2, 1993, the circuit court declared that CIE was in a "hazardous condition financially" and ordered rehabilitation. The circuit court enjoined CIE Service from acting as CIE's attorney-in-fact until further order of the court.

On May 19, 1993, Angoff appointed Alex Bartlett as a special deputy rehabilitator and appointed Bartlett's law firm, Husch and Eppenberger, as special counsel. As his first act on May 19, 1993, Bartlett filed an amended petition asking the circuit court to order rehabilitation of CIE Service, too. Bartlett alleged that because CIE Service transacted CIE's business as CIE's attorney-in-fact, it was engaged in the business of insurance and was subject to an order of rehabilitation with CIE as though they were one insurer. Bartlett further claimed that the provisions of § 379.720.1 made CIE Service liable for any deficiencies in reserves and surplus.[2]

A plethora of motions ensued. After a hearing on January 6, 1995, the circuit court ordered phase two of CIE's and CIE Service's reorganization. On February 8, 1995, CIE Service objected to the circuit court's denominating its order as a judgment and contested foreclosing the issue of whether CIE Service could present evidence opposing Angoff's contention that CIE was insolvent and subject to rehabilitation. The circuit court redesignated its action as an order and set a hearing for June 13, 1995, to permit CIE Service to present evidence on the contested issues.

At the hearing on June 13, 1995, CIE Service objected that its due process rights had been violated because Bartlett had prevented it from using its assets to defend itself. The circuit court agreed that basic fairness required that CIE not be "hamstrung" in being able to pay for fees to

---

**2.** Section 379.720.1 says, "If at any time the amounts on hand are less than the requirements of sections 379.700 and 379.710, the subscribers or their attorney for them shall make up the deficiency." CIE Service disputes any liability under this section.

prepare its case. The court postponed the trial and directed CIE Service to prepare a budget to allow counsel "to fairly and adequately represent the interest of your client."

Before CIE Service had time to prepare for trial, Bartlett asked the circuit court on August 30, 1995, to liquidate CIE. CIE Service did not receive notice until late that day of Bartlett's motion.

Bartlett alleged multiple grounds for liquidation. He averred that further attempts at rehabilitation would "substantially increase the risk of loss to creditors, policyholders or the public, or would be futile"—the language of § 375.1174.1. He also alleged that several grounds for liquidation existed under § 375.1175, including CIE's insolvency.

At a hearing on August 31, 1995, CIE Service objected to the lack of notice. Bartlett contended that although § 375.1174.1 authorizes an insurance exchange's directors "to take such actions as are reasonably necessary to defend against the petition [for liquidation]," CIE had no directors, so no one, including CIE Service, was entitled to contest his petition for liquidation. Notice, he contended, was therefore unnecessary.

The circuit court entered a "provisional" order to liquidate CIE only. The court agreed with Angoff that CIE Service could "come in and question [the order] afterwards."[3] The circuit court set a later hearing to allow CIE Service to present evidence and to contest the provisional order.

In the meantime, Bartlett asked the circuit court to declare that the liquidation order had become final and was not subject to challenge by CIE Service. The circuit court denied the motion on June 6, 1996, and Bartlett sought this court's writ of prohibition. We denied the request, and Bartlett filed for a writ with the Supreme Court which also denied his request.

When the circuit court convened a hearing in the summer of 1996, Bartlett and CIE Service presented evidence which filled 1345 transcript pages. On September 30, 1996, the circuit court entered its judgment. In its findings of fact and conclusions of law, it found that CIE was not insolvent within the meaning of § 375.1175. It also found that not only did CIE not have a deficiency in its reserves within the meaning of § 379.720, it had a surplus of $3,582,180 which exceeded the required minimum of $2.4 million for a multiline insurer. Because the purported deficiency was the reason that Angoff had moved to place CIE in rehabilitation, the circuit court concluded that no grounds existed to keep CIE in rehabilitation. Its judgment set aside the provisional order of liquidation, removed Angoff and Bartlett from authority, terminated the receivership, removed the order enjoining CIE Service from acting as CIE's attorney-in-fact, and ordered all assets and records returned to CIE Service for the benefit of CIE.

When Bartlett did not return CIE's records, CIE Service obtained the circuit court's writ of possession to get them. Bartlett, acting as Angoff's attorney, filed a motion to set aside the judgment or to stay the judgment during appeal. The circuit court denied the motion on October 4, 1996. Angoff filed a notice of appeal on the same day, joining both CIE and CIE Service.

On November 4, 1996, Angoff asked the circuit court to dismiss CIE Service from the lawsuit. In the meantime, on October 17, 1996, Bartlett filed a 114-page motion with this court requesting stay of the circuit court's judgment. Angoff again argued that the provisional order was a final order and nothing further should have happened after the circuit court issued it. Angoff dropped CIE Service from the motion's caption. He claimed that, because the issue of whether CIE Service should be put into rehabilitation along with CIE was not before the court in the hearing, CIE Service was not a respondent in this appeal. CIE asked us to dismiss Angoff's appeal because he had not included CIE Services, an indispensable party. We

---

3. Although Bartlett continues to assert that the provisional order was not provisional, the circuit court said in its order, "The court will consider the request of CIE Service to present evidence as a motion to reconsider and modify this order, and this order is therefore denominated as a provisional order in liquidation, and is not considered a final judgment as defined at Section 375.630.4."

denied Angoff's motion for stay but delayed acting on CIE's motion to dismiss until now.

■ In his first point on appeal, Angoff contends that the circuit court erred in setting aside the liquidation order because the order had become final and the court lacked authority to set it aside. The circuit court said, "The Court will consider the request of CIE Service to present evidence as a motion to reconsider and modify this order, and this order is therefore denominated as a provisional order in liquidation, and is not considered a final judgment as defined at Section 375.630.4." [4] This simply was not a final order.

We faced a similar situation in *Ainsworth v. Dalton,* 694 S.W.2d 833, 835 (Mo.App. 1985).[5] In that case, the circuit court said in its order for attorney fees that it "reserve[d] jurisdiction to amplify, extend, limit, abrogate or otherwise modify this Order as may hereafter seem proper." *Id.* Relying on *State ex rel. Wagner v. Ruddy,* 582 S.W.2d 692, 694–95 (Mo. banc 1979), we ruled that the order was not final. The *Wagner* court said:

A decree is final when it fully decides and disposes of the whole merits of the cause, and leaves no further questions therein for the future judgment of the court.... In order to be final the decree must be complete and certain ...; it must show intrinsically and distinctly, and not inferentially, that the matter has been adjudicated.

*Id.*

In this case, the matter was far from being fully adjudicated. The circuit court made its

order "provisional" to give a party with an interest adverse to Angoff's and Bartlett's an opportunity to be heard. Section 375.1174.1 requires the circuit court, before liquidating an insurance company, to "permit the directors of the insurer to take such actions as are reasonably necessary to defend against the petition [to liquidate.]" A reciprocal insurance exchange typically does not have a board of directors, and CIE was no exception.[6] The circuit court anticipated that CIE Service, as CIE's attorney-in-fact, would fulfill the same function and, hence, granted CIE Service an opportunity to contest CIE's liquidation.[7]

None of the cases cited by Angoff on this issue was persuasive. We distinguished all of them on their facts. We deny his first point.

In his second point, Angoff attacks the circuit court's permitting CIE Service to participate in the hearing. He argues that CIE Service did not have standing to participate because § 375.1174 gives only directors standing to oppose his petition to liquidate an insurance company. We disagree.

Section 379.780.1 says, "Except as provided in this section, no law of this state relating to insurance shall apply to the exchange of indemnity contracts. When any other law is applicable, it shall be construed in accordance with the fundamental nature of a reciprocal or interinsurance exchange." Section 379.780.2(3) makes the provisions of Chapter 375, governing supervision and liquidation of insurance companies, applicable to a reciprocal insurance exchange "except

---

4. Section 375.630.4 says, "If the finding be for the [director of insurance], the court shall render such orders, decrees and judgments as are allowed by sections 375.1150 to 375.1246. Such decree or judgment shall, for all purposes of an appeal, be considered a final judgment, and the defendant may appeal from the same as in other civil cases; provided, the appeal be prayed for and perfected within five days after such judgment, and that the bond shall be for such an amount as the court may fix; and provided, that no appeal nor supersedeas bond shall operate as a dissolution of the order of the court."

5. In Ainsworth, the court had reserved the issue of the amount of the award of future attorney fees associated with the receivership in its order

of liquidation. Once an actual award of fees was made, the court determined that that award was final and appealable. The court did not discuss the issue of whether the order of liquidation itself was final and appealable.

6. Though CIE had an advisory board, the attorney-in-fact agreement limited the duties of the board to deciding the investing of subscriber funds, payment of dividends on excess deposits, and determining the amount of contingent liability.

7. Angoff contests the authority of the circuit court to permit CIE Service to participate as a substitute board of directors. We address this issue later.

wherein the provisions thereof are specifically or clearly applicable only to a stock or mutual insurer."

■ CIE had no board denominated "directors." Pursuant to CIE's agreement with CIE Service, CIE Service functioned in the capacity of directors. The agreement permitted CIE Service to:

[E]xchange contracts of insurance for us with other subscribers at the Casualty Indemnity Exchange and has full power to do or perform every act we ourselves could do in relation to such insurance, including the execution and issuance of contracts relating thereto and the reinsurance thereof, also including appearances for us in actions, suits and proceedings and the defense, compromise or adjustment of same at the discretion of the Attorney–in–Fact, and in addition thereto the Attorney–in–Fact is specifically authorized to do any and all things necessary to effect compliance with the laws of any State.

Indeed, the Supreme Court has said that a reciprocal insurance exchange must have an attorney-in-fact to do all of the exchange's business. *Yeats*, 127 S.W.2d at 655. The circuit court did not abuse its discretion in allowing CIE Service to fulfill the directors' function set out in § 375.1174. The circuit court acted prudently in deciding to hear a party with an interest adverse to Bartlett's before liquidating CIE. We deny Angoff's second point.

In his third point, Angoff contends that the circuit court erred in setting aside CIE's liquidation because Bartlett had, in his judgment, concluded that further attempts to rehabilitate CIE would be futile and would substantially increase the risk of loss to creditors, policyholders, and the public. Angoff also contends that, because Bartlett's election to liquidate CIE was not an abuse of discretion, the circuit court erred in setting aside the provisional order of liquidation. We disagree.

The reasonableness of Bartlett's actions is not the issue. Section 375.1174.1 permits the director to seek liquidation when he "believes further attempts to rehabilitate an insurer would substantially increase the risk of loss to creditors, policyholders or the public, or would be futile[.]" The statute, however, requires the director to seek the circuit court's approval.

■ We do not deem this to be a mandate for the court's being merely "rubber stamp." It requires the circuit court to agree with the director that the reasons set out in the statutes for rehabilitating or for liquidating an insurance company exist. Just as a prosecutor has discretion in determining what charges to pursue against criminal defendants, the director can still exercise his discretion in what remedies to pursue for failing insurance companies.[8] Just as the prosecutor still must prove his case—notwithstanding the reasonableness of his decision to file charges—the director must prove to the circuit court that grounds exist for rehabilitating or for liquidating an insurance company. We deny Angoff's third point.

In his fourth point, Angoff alleges that the circuit court erred in setting aside the provisional order of liquidation because Bartlett

---

**8.** One of the cases on which Angoff relies, *Angoff v. American Fin. Sec. Life Ins. Co.*, 869 S.W.2d 90 (Mo.App.1993), makes the same point. In that case, American Financial contended that the director's decision to place it into rehabilitation was erroneous because the circuit court infringed on the director's duties by making different findings as to the amount of reinsurance credits. *Id.* at 93. In upholding the circuit court's order of liquidation, this court said, "[American Financial's] argument again misses the mark. The Director sought rehabilitation for [American Financial] for operating with excessive premiums to assets, overstating its reserve credits, and for failing to maintain the required amount of capital and surplus. The trial court found all these things to be true to some extent and additionally found the accounting methodology that [American Financial] used evidenced hazardous operating conditions." *Id.* In the same vein, Angoff misses the mark in his reliance on *State ex rel. Missouri State Life Ins. Co. v. Hall*, 330 Mo. 1107, 52 S.W.2d 174 (1932). In that case, the Supreme Court said, "The superintendent of insurance is the administrative officer in charge of [regulating the insurance business], and courts are without authority to interfere with his administration of the [Insurance] Code." *Id.* 52 S.W.2d at 177. Nonetheless, when statutory provisions specifically require court approval for entry of an order, we do not read this case as saying that the General Assembly was mandating that the courts act as mere "rubber stamps" in adjudicating the director's cases.

alleged in his motion for liquidation alternative grounds for liquidation which the circuit court did not consider. Specifically, Angoff states that CIE should have been liquidated because it had ceased transacting the business of insurance for one year in contravention of § 375.1175(5), that CIE did not meet the requirements for incorporation and authorization for "doing business" in contravention of § 375.1175(4), and that CIE was "insolvent" within the meaning of § 375.1175(2) as of the date of the provisional order of liquidation. We disagree.

The circuit court said in its findings of fact and conclusions of law, "CIE is presently not 'insolvent' within the meaning of § 375.1175, RSMo 1994. CIE's surplus is presently $3,582,180." It also found "that the surplus deficiency, which was the reason CIE was placed into rehabilitation, no longer exists and that *no grounds* exist to continue to hold CIE in rehabilitation." [9] We have examined the record and find sufficient evidence supporting each of these findings.

Angoff contends that the circuit court should have evaluated CIE's status of insolvency as of the date of the entry of the provisional order of liquidation, but he cites us to no authority for that proposition. We find no statutory or other legal mandate requiring this.

He also contends that, pursuant to § 375.1175.5, the circuit court should have ordered CIE's liquidation because it had ceased transacting business for more than one year. Section 375.1175.5 provides for the liquidation of a company which does not operate for a year at the director's behest,[10] but the circuit court, pursuant to Bartlett's request, prohibited CIE Service from acting as

CIE's attorney-in-fact. As a result, CIE could not transact any business of insurance.

Moreover, Angoff's complaint that CIE should be liquidated under § 375.1175.4 because "it could not meet the requirements for incorporation and authorization specified in the law under which it was incorporated or is doing business" is misplaced. Angoff complains that the circuit court did not require CIE to have 100 separate risks currently executed or effective contracts for insurance as required by § 379.670(6). CIE, indeed, did not have them, but this was because the circuit court's order of rehabilitation sought by Angoff prevented it from transacting any new business. We deny Angoff's fourth point.

Angoff's fifth point contends that the circuit court erred in setting aside its rehabilitation order because it did not hear evidence on each of the grounds for liquidation proffered by Bartlett. Pursuant to § 375.1174.1, Bartlett told the circuit court that he believed that further attempts to rehabilitate CIE would "substantially increase the risk of loss to creditors, policyholders or the public, or would be futile." [11] Angoff argues that the circuit court was obligated to hear Bartlett's evidence that other grounds existed to liquidate CIE.

The point is without merit. Bartlett told the circuit court that the purpose of the hearing was to address CIE's solvency and "whether further attempts to rehabilitate would be futile." The circuit court did not specifically address the points made by Angoff in this appeal but stated that "no grounds" exist. This seems to us to be a sufficient ruling that none of the grounds asserted by Angoff or set out in statute existed.[12] We deny Angoff's fifth point.

9. We added the emphasis.

10. Angoff relies on *Leggett v. General Indem. Exch.*, 363 Mo. 273, 250 S.W.2d 710 (1952), for the proposition that the handling of claims did not constitute "the doing" of insurance business, and, therefore, liquidation for "ceasing to transact business of insurance for a period of one year" was an appropriate ground for liquidation. *Leggett* is not on point because the insurance company in that case had not been restricted from transacting business; the Department of Insurance had not placed it in rehabilitation, and

the company had stopped transacting business of its own accord. *Id.* 250 S.W.2d at 712.

11. Angoff also contends again in this point that the circuit court erred in not hearing evidence on each of the other alternative grounds alleged in the motion to liquidate. Having decided those issues, we decline to address them again here.

12. CIE Service filed a request for findings of fact and conclusions of law on 10 specific questions, and the circuit court answered each of those questions. We do not find anything in the record

Angoff's sixth point contends that the circuit court's conclusion that CIE was solvent by nearly $1.2 million as of June 30, 1996, was against the weight of the evidence.[13] We will reverse a circuit court's judgment when the court acts as trier of fact only when the court's judgment is not supported by any substantial evidence or is against the weight of the evidence or erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing such a case, we consider only the facts and inferences favorable to the prevailing party. *In re Estate of Latimer*, 913 S.W.2d 51, 52–53 (Mo.App.1995). That the record contains evidence which might support another conclusion does not necessarily establish that the circuit court's decision was against the weight of the evidence. *In the Interest of J.N.C.*, 913 S.W.2d 376, 379 (Mo.App.1996).

Angoff suggests that §§ 375.630.1 and 375.1158.3 [14] required the circuit court to accord his evidence *prima facie* effect. Section 375.630.1 says:

In a hearing before the court, master or referee, certified copies of the statement made by the defendant, or of reports of examinations of the defendant made by the director, or persons appointed by him, shall be received as self-authenticated, if offered by the director, as:

(1) Prima facie evidence of the facts therein contained pertaining to the condition and affairs of the defendant;

(2) A rebuttable presumption of the facts contained in any such report pertaining to the condition and affairs of the defendant; and

(3) A rebuttable presumption that the facts pertaining to the condition and affairs of the defendant as of the examination date are true as of the date of the hearing, if such report is as of a date not more than one hundred eighty days preceding the filing of the petition.

Section 375.1158.3 says:

In any delinquency proceeding under sections 375.1150 to 375.1246, certified copies of the statement made by the company proceeded against, or of reports of examinations of the company made by the director or persons appointed by him, shall be received, if offered by the director, as prima facie evidence of the facts therein contained pertaining to the condition and affairs of the insurer.

In discussing the effect of *prima facie* evidence, the Supreme Court, in *State v. Siecke*, 472 S.W.2d 367, 369 (Mo.1971), cited approvingly the words of this court:

In *State ex rel. State Dept. of Pub. Health & W. v. Ruble* (Mo.App.), 461 S.W.2d 909, 913, the court says that "prima facie evidence" means " * * * such evidence which, in law, is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence * * * ", although it " * * * is not conclusive evidence, and while it suffices to support a judgment upon a fact so established, it does not require or demand a verdict for the party whose contention it supports. * * * "

indicating that Angoff made such a request. The Supreme Court has cited with approval Judge Wellborn's statement, in *Snider v. Snider*, 570 S.W.2d 770, 774–75 (Mo.App.1978) (construing Rule 73.01): "If appellant wished the court to make findings on specific issues, it was his duty, in view of the inadequacy of the request of respondent's counsel, to specify the issues upon which findings were sought. *Dardick v. Dardick*, 670 S.W.2d 865, 867 (Mo. banc 1984). Having failed to do so, appellant is in no position to assert error."

13. Angoff asserts a multitude of allegations, in eight subpoints, including that CIE Service misled the court into accepting an improper rationale for determining solvency, that witnesses'

testimony did not constitute substantial evidence, that net IBNR and bulk claim reserves were improperly determined in that the director's financial account was entitled to *prima facie* effect and was not sufficiently rebutted by CIE Service, that the circuit court did not establish liability reserves for unearned premiums and unallocated loss adjustment expenses, and that no credit for reinsurance should have been allowed because there was no evidence that the reinsurance agreement contained an insolvency clause.

14. Although similar in language, § 375.630.1 is the general provision, and § 375.1158.3 is the specific provision relating to evidence produced by the director in a proceeding for supervision, rehabilitation and liquidation.

We have examined the evidence on the issues cited by Angoff and found that CIE Service rebutted it sufficiently to support the circuit court's judgment. We deny Angoff's sixth point.

In his seventh point, Angoff contends that the circuit court erred in releasing CIE from rehabilitation because: (1) the statutes permit a circuit court to release an insurer only from *rehabilitation,* and CIE was in *liquidation;* (2) the circuit court failed to heed statutory mandate that it give notice of a hearing for the presentation of each possible ground for rehabilitation under § 375.1165 before releasing an insurer from rehabilitation; (3) the circuit court did not find that each of the grounds for rehabilitation had ceased to exist; and (4) the circuit court did not determine that the requirements of § 375.1158.2 had been satisfied before releasing CIE from rehabilitation. We addressed the first three issues when we determined that the provisional order of liquidation was not a final order and that the circuit court disposed of the alternative grounds for rehabilitation when it stated that "no grounds" for rehabilitation existed. We do, however, consider whether the circuit court failed to observe the requirements of § 375.1158.2 before releasing CIE from rehabilitation.

Section 375.1158.2 says:

No insurer that is subject to any delinquency proceedings, whether formal or informal, administrative or judicial, shall:

(1) Be released from such proceeding, unless such proceeding is converted into a judicial rehabilitation or liquidation proceeding;

(2) Be permitted to solicit or accept new business or request or accept the restoration of any suspended or revoked license or certificate of authority;

(3) Be returned to the control of its shareholders or private management; or

(4) Have any of its assets returned to the control of its shareholders or private management[;]

Until all payments of or on account of the insurer's contractual obligations by all guaranty associations and all expenses on account of such delinquency proceedings, along with all expenses thereof and interest on all such payments and expenses, shall have been repaid to the department of insurance and guaranty associations or a plan of repayment by the insurer shall have been approved by the director. Moneys collected by the director pursuant to this section shall be transferred to the state treasurer and deposited to the general revenue fund.

The circuit court's judgment did not address these statutory requirements. We, therefore, remand this case to the circuit court for its consideration of whether the expenses of the delinquency proceedings, and guaranty obligations, if any, have been paid.[15]

In his final point, Angoff contends that the circuit court erred in returning all of CIE's assets to it, in restoring CIE Service to its attorney-in-fact status, and in reinstating CIE's license and certificate of authority which were suspended by the order of rehabilitation.

■ Section 375.1174.3 says, "If the court finds that grounds for rehabilitation under section 375.1165 no longer exist, it shall order that the insurer be restored to possession of its property *and the control of the business."* [16] The statute clearly authorizes the circuit court to return the exchange to the possession of its property. The question is whether restoring the insurer to "the control of the business" includes the restoration of licenses and certificates of authority which are normally issued by the director.

Section 379.710.2 requires an insurance exchange to have a surplus of at least $2.4 million "in addition to other reserves required" before underwriting more than one line of insurance. Section 379.710.4 requires

**15.** Section 375.1168.1 says, "The compensation of the special deputy, counsel, clerks and assistants and all expenses of taking possession of the insurer and of conducting the proceedings shall be fixed by the director with the approval of the court and shall be paid out of the funds or assets of the insurer." The circuit court may approve, therefore, the expenses and fees owing on account of the proceedings.

**16.** We added the emphasis.

a claim or loss reserve for insurance exchanges insuring employer's liability, public liability, workers' compensation or automobile insurance "sufficient to discharge all liabilities on all outstanding losses arising under policies issued." Section 379.700 also requires a reserve for net unearned premiums or 50 percent of "net annual advance premiums or deposits collected and credited to the accounts of subscribers on policies having one year or less to run and pro rata on those for longer periods." The circuit court specifically addressed these requirements in its judgment and determined that "CIE has a surplus of $3,582,180 and, therefore, exceeds the statutory surplus requirements for a reciprocal exchange as defined under § 379.710."

Before rehabilitation, Angoff accepted CIE Service's application for a license pursuant to § 379.670 and granted the annual certificate of authority pursuant to § 379.750.1, permitting it to do business. Section 379.710.3 says, "In order to continue writing new business, any reciprocal or interinsurance exchange shall maintain a surplus in the amount required to commence business." The attorney-in-fact is required by § 379.730 to submit an annual statement of financial condition to the director of insurance, and upon compliance with the statutory requirements, under § 379.750 "the director of insurance shall issue the certificate of authority." Section 379.750.3 further provides, "Any attorney who may have procured a certificate of authority hereunder shall renew the same annually as of July first thereafter; provided, however, that any certificate of authority shall continue in full force and effect until the new certificate of authority be issued or specifically refused."

Because the circuit court specifically acknowledged the requirements for the granting of a certificate of authority, we do not ascertain that the circuit court exceeded its authority to restore CIE to the *status quo* or invaded the director's province in removing the suspension of CIE's certificate of authority and license. Neither do we read the circuit court's judgment to exempt CIE from future compliance with surplus and reserve requirements in the required annual statements of financial condition and renewals of certificates of authority.

To rule otherwise would grant the director the capability of vetoing the circuit court's judgment. Missouri law favors the rehabilitation of insurance companies. *Lucas v. Manufacturing Lumbermen's Underwriters,* 349 Mo. 835, 163 S.W.2d 750, 755 (1942). Any objection by the director to the surplus and reserve requirements can be addressed in the annual renewal application. We deny Angoff's eighth point.

CIE filed a motion with this court to dismiss the appeal. CIE claims that in this appeal Angoff abandoned CIE Service, an indispensable party, so this court was deprived of jurisdiction to consider the appeal. Because of our decision to affirm the circuit court's judgment concerning all of the substantive issues, the motion is moot. Even if we were to conclude that Angoff wrongfully abandoned CIE Service as a party on appeal, we do not discern any prejudice to CIE or CIE Service. Hence, we deny the motion to dismiss.

We affirm the judgment of the circuit court. We remand the case to the circuit court, however, for its determination of requirements of § 375.1158.2.

ULRICH, C.J., P.J., and
BRECKENRIDGE, J., concur.