**C. Donald AINSWORTH, Director, Division of Insurance Department of Consumer Affairs, Regulation and Licensing State of Missouri, Plaintiff,**

v.

**James DALTON, Jerome Waterman and A. Tegethoff, Jr., Respondents,**

v.

**OLD SECURITY LIFE INSURANCE COMPANY, Appellant,**

**and**

**ISC Financial Corporation, Appellant.**

No. WD 36244.

Missouri Court of Appeals,
Western District.

June 18, 1985.

Gene A. Deleve, Kansas City, for appellant.

Jack B. Robertson, Kansas City, for respondents.

James P. Dalton, Jefferson City, for plaintiff.

Before KENNEDY, P.J., TURNAGE, C.J., and DIXON, J.

DIXON, Judge.

ISC and Old Security appeal from the trial court's order allowing additional fees of $550,000.00 to the three Commissioners of Claims and Masters in Equity in the Old Security receivership. Appellants, ISC and Old Security, assert the trial court erred in (1) awarding the additional fees because the court initially ordered that the Commissioners be paid $50 per hour and thus the issue of compensation was *res judicata;* (2) making its award based on rates charged by attorneys, because this was the incorrect standard to be used; and (3) making its award because, even if attorney's fees were the correct standard, the award was excessive. Affirmed.

In 1977, the Director of Insurance began the receivership of Old Security, whose sole stockholder is ISC. After approximately one year, rehabilitation being deemed impossible, on May 15, 1979, the court entered an order for Old Security's liquidation. On May 17, 1979, the court appointed, as Commissioners of Claims,

Messrs. Tegethoff, Waterman, and Dalton, three attorneys with vast experience in the affected areas of law. Pertinent to this appeal, the court's order stated,

7. Any claim for compensation by the Commissioner shall be determined judicially by the court after presentation on its merits in open court ... 9. The Court reserves jurisdiction to amplify, extend, limit, abrogate or otherwise modify this Order as may hereafter seem proper.

The three men responded to the court's order as follows:

Comes now Andrew E. Tegethoff, Jerome F. Waterman, and James P. Dalton having heretofore been appointed by the Court on May 17, 1979, to act as and on behalf of the Court as Commissioners of Claims do hereby accept said appointments and having also herein accepted the Court's allowance of fees in the amount of $50.00 per hour from and after May 17, 1979, *until further order of the Court* together with expenses, together with secretarial and other incurred expenses which are reasonable all in connection with this receivership [*sic*].

(Emphasis added). For the next five years, the three men served as Commissioners of Claims, fulfilling their duties as such. On September 5, 1980, they were also appointed by the Court as Masters in Equity. In the September 5 order appointing them as masters, the court stated, "Any claim for compensation by said masters shall be determined judicially by the Court after presentation on its merits in open Court ... [and] 6. The Court reserves jurisdiction to amplify, extend, limit, abrogate or otherwise modify this Order as may hereafter seem proper."

The three men did not file separate reports as commissioners and as masters but, in the course of their tenure, processed thousands of claims. The appointment as masters, however, permitted them to rule on the offsetting of claims and to hear affirmative claims pressed by the receiver against alleged creditors. Every month, they filed with the court an application for compensation, encompassing both out-of-

pocket expenses and hourly compensation. Over the five-year period, they were reimbursed $83,000 in out-of-pocket expenses. These out-of-pocket expenses were primarily travel, meals, and lodging. In addition, as compensation, Dalton received $282,305; Waterman received $292,375; and Tegethoff received $170,935 in interim payments. This averaged approximately $50 per hour. On May 15, 1984, the three filed their final report on the progress of the liquidation, their application for final compensation, and their request for discharge.

In the court's July 19, 1984 order, it found that "at the time of the appointment of said Commissioners, they accepted an hourly rate of compensation of $50 per hour, approved by the Court, *until further order of this Court.*" (Emphasis added). However, the court noted that, because it could not ascertain the financial status, assets, and liabilities of Old Security at the outset, it could not have completely and finally assessed the rate at which the Commissioners should be compensated and yet have produced an equitable result for all interested persons. It also noted that, upon appointing the men as masters, it had specifically reserved to itself the question of compensation. The court went on to review the complex tasks the Commissioners and Masters had performed, and recognized that the complexity of the issues had made it necessary to appoint lawyers as commissioners. Based upon the evidence before it, including the time spent, the complexity of the issues, and the results achieved, the court determined that the Commissioners and Masters would receive, as additional and final compensation: Dalton: $200,000; Waterman: $200,000; Tegethoff: $150,000; thus bringing the rate of compensation to $87.00 per hour.

 ISC twice attempted to intervene in the receivership proceeding, but the court did not allow it to intervene as a party. At the hearing on the issue of additional compensation, ISC was allowed to participate only as an "interested party." ISC raises no issue as to the scope of its participation in the trial court. While ISC was properly refused the general right of intervention in the receivership, it is nonetheless a proper party in this proceeding. *Ainsworth v. Old Security Life Ins. Co.,* 685 S.W.2d 583, 585 (Mo.App.1985). Although the Old Security receivership is still open and being administered, the court's order granting additional compensation to the Commissioners and Masters is final and appealable. Section 512.020 RSMo 1978.

 Old Security and ISC first assert the trial court erred in granting the Commissioners additional compensation because the original $50 per hour award was final on the subject of compensation. This assertion ignores the plain meaning of the court's orders appointing Dalton, et. al., as Commissioners, and later as Masters. Their acceptance of the appointment as Commissioners was couched in terms of "fees in the amount of $50.00 per hour from and after May 17, 1979, until further order of the court ...", which were paid out on a monthly basis. This amount was not immutable, because, as the court's two designated orders specifically stated, "The Court reserves jurisdiction to amplify, extend, limit, abrogate or otherwise modify this Order as may hereafter seem proper." The orders were thus explicitly subject to change and were not final and appealable.

A decree is final when it fully decides and disposes of the whole merits of the cause, and leaves no further questions therein for the future judgment of the court.... In order to be final the decree must be complete and certain ...; it must show intrinsically and distinctly, and not inferentially, that the matter has been adjudicated.

*State ex rel. Wagner v. Ruddy,* 582 S.W.2d 692, 694–95 (Mo. banc 1979), *citing,* 30A C.J.S. Equity § 582, pp. 647–49. When an issue has not been fully heard and adjudicated by a court, it is not to be given *res judicata* effect. *Cloyd v. Cloyd,* 564 S.W.2d 337, 344 (Mo.App.1978). As the orders were not final,

[l]ogic and justice would seem to indicate that a trial court should be permitted to retain control of every phase of a case so

that it may correct errors, or, in its discretion, modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable.

*State ex rel. Schweitzer v. Greene,* 438 S.W.2d 229, 232 (Mo. banc 1969).

The logic of the court's having waited to make a final determination of compensation is also demonstrated in its July 19, 1984, order. There, the court stated,

At the same time of the appointment of the Commissioners of Claims, this Court was unable to ascertain the true financial status of the company in receivership and thus it would have been unconscionable for this Court at that time to have ordered payment on an hourly rate which would adequately and fairly compensate the Commissioners as other lawyers would be paid in private enterprise. In May of 1979, upon the appointment of the Commissioners, since this Court was unable to determine the exact extent of the assets and liabilities of the company it would not at that time make an order of compensation which would have been potentially detrimental to the interest of those person [sic] who were legitimate claimants of the receivership.

In *Rozansky Feed Co., Inc. v. Monsanto Co.,* 579 S.W.2d 810 (Mo.App.1979), this court, espousing the *Schweitzer* position, said: "To follow the view urged here by appellant would mean that a trial court could never correct what it ultimately concludes to have been a mistaken judgment even when its jurisdiction over the case remains intact. Such a doctrine would militate against the practical and effective administration of justice." *Id.* at 813. The same rationale applies to the complex administration of a receivership. Judge Kinder explicitly retained jurisdiction to enable him to later modify his orders. The orders were not final and, although not erroneous, were subject to modification by the court. The doctrine of *res judicata* is inapplicable to the initial compensation ordered by Judge Kinder. In this connection, it should be noted that if, as appellants contend,

these monthly orders were final, a multitude of appeals from the orders would have likely ensued. The cases cited by ISC and Old Security are inapposite as they deal solely with situations involving the application of the doctrine of *res judicata* to *final judgments.*

The trial court's final order makes plain that it had considered its orders of interim payment interlocutory and subject to change. If the trial court were required to make such intermediate orders of compensation without any right to later adjust the amounts, a great deal of flexibility necessary to the administration of such receiverships would be lost. It is usually impossible to predict with any certainty the financial outcome of such a proceeding. The energy and zeal of the Commissioners will determine to a large extent the success of the receivership. While contingent fees cannot and should not be permitted, the trial court in order to extend the necessary protection of the receivership to those entitled to it at the same time provide an incentive for more than routine performance by the Commissioners is within its powers to make interlocutory orders as to compensation.

ISC and Old Security also assert the court erred in awarding additional compensation to the Commissioners because, in making the award, it allegedly used an incorrect standard, the hourly rates for practicing attorneys and, in any event, the award was excessive.

■ "Generally, the determination of the amount of compensation to be allowed a master for his services in any particular case is the function of the court, *subject to the limits of judicial discretion.*" 27 Am. Jur.2d Equity, Sec. 228, p. 785 (Emphasis added); *Newton v. Consolidated Gas Co. of New York,* 259 U.S. 101, 105, 42 S.Ct. 438, 439, 66 L.Ed. 844 (1922); *Snook v. Snook,* 184 Neb. 798, 172 N.W.2d 85, 86 (1969); *Sweet v. Fairbairn,* 208 Neb. 286, 303 N.W.2d 288 (1981); *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 511 (Tex.1980); *Crest Finance Co. v. First State Bank of Westmont,* 109 Ill.App.2d

462, 248 N.E.2d 809, 811 (1969); *Donner v. Donner,* 346 So.2d 1069, 1070 (Fla.App. 1977); *Shuman v. Shuman,* 195 Pa.Super. 145, 170 A.2d 597 (1961). In making the award,

> the sum allowed must be fair and reasonable, having regard to all the circumstances, including actual work done, the time devoted to the reference by the master, his ability, experience, and fitness, the difficulty of the work, the amount involved in the suit, including the amount of money or property passing through his hands, and in general the responsibility and trouble incurred.

30A C.J.S. *Equity,* § 520, p. 558–60; *See, Carrier Corp. v. Royale Investment Co.,* 366 S.W.2d 346, 359 (Mo.1963); *Snook, supra,* 172 N.W.2d at 86; *Crest Finance Co., supra,* 248 N.E.2d at 811.

In the July 19 order awarding final compensation and discharging the Commissioners and Masters, the court stated, "Early in these proceedings this Court determined the necessity that any Commissioner appointed must be an attorney experienced in the law." It went on to note

> the complex circumstances surrounding the receivership and the actual work done, the time expended, the experience, ability and background of the Commissioners of Claims/Masters in Equity, the difficult nature of the work undertaken, the expertise required by their duties, the sums of money involved in this receivership, the disruption of their normal law practice, the fact that the time expended on this receivership will more than likely generate no additional law business in their firms, . . . .

The Court also stated it deemed the results "unparalleled in the history of receiverships in this state or any other state." ▮ Patently, the court's order took into account all relevant factors in the determination of the final compensation to be awarded the Commissioners/Masters. In computing the actual sum, the court took judicial notice of inflation, recognized that the average rate of compensation for attorneys in 1979 was $75 per hour and in 1984

was $100 per hour, noted that a minimum fee of $100 per hour "would be reasonable and adequate," and ultimately made an award based on an average compensation figure of $87 per hour. This cannot be said to have been an abuse of discretion.

ISC and Old Security vehemently oppose the award of what becomes an extra $37 per hour (in addition to the original award of $50 per hour), as running counter to the mandate of *Newton,* wherein, after noting the compensation received by various judges, governors, and mayors, the court stated, "Although none of these can be taken as a rigid standard, they are to be considered when it becomes necessary to determine what shall be paid to an attorney called to assist the court." *Newton, supra,* 259 U.S. at 106, 42 S.Ct. at 440. Based on this language, appellants would limit the Commissioners/Masters' award to $50 per hour (axiomatically less than the average compensation figures for attorneys, as developed in the record) rather than the $87 per hour arrived at by the court. This position, however, ignores compelling advice given by the *Newton* court. The Master/Commissioner

> should be adequately remunerated for actual work done, time employed, and the responsibility assumed. His compensation should be liberal, but not exorbitant. The rights of those who ultimately pay must be carefully protected; and *while salaries prescribed by law for judicial officers performing similar duties are valuable guides, a higher rate of compensation is generally necessary in order to secure ability and experience in an exacting and temporary employment which often seriously interferes with other undertakings.*

*Id.,* at 105, 42 S.Ct. at 439 (Emphasis added). That Judge Kinder noted the average compensation for attorneys at the time, and, as a corollary, recognized the reasonableness of a $100 per hour award, but awarded less than that amount, is not an abuse of discretion. Rather, it directly follows the position advanced in *Newton.* Likewise, it must be noted that the award

itself, based on any standard, is "liberal, but not exorbitant," *Id.*, at 105, 42 S.Ct. at 439, and thus must be affirmed.

There are other more intangible factors which appear in the record and are at least obliquely referred to in the court's order. Each of the lawyers acting as Commissioner and Master was also engaged in private practice. The work for the court was for the most part located in Kansas City at the receiver's office. This required two of the lawyers to be absent from their offices and the locations of their practices for two to three days at a time on a weekly basis. As one of the lawyers testified, such continued absence would have a deleterious effect on a normal law practice. The disruption in their personal lives for this extended period is also a factor to be weighed. Overhead in the practice continued, by way of rent and other fixed expenses, even though there were no billable hours to offset that expense, other than the court's allowance. Thus, the fees allowed must absorb that part of the lawyer's overhead which had to be incurred to maintain his practice. While it is true that the receiver also incurred substantial overhead expense in maintaining the offices which the Commissioner/Masters utilized as well, the necessities of the situation required that expenditure in the overall receivership proceeding. Only in the area of secretarial expense— and then to a minuscule degree—did the lawyers acting as Commissioners and Masters receive reimbursement for any expenses connected with their own offices. In light of all the circumstances and the record, the awards were not excessive.

The judgment of the circuit court is affirmed.

All concur.