In re TRANSIT CASUALTY COMPANY in Receivership PULITZER PUB-LISHING COMPANY, Appellant,

v.

TRANSIT CASUALTY COMPANY in Receivership, INTERVENING EMPLOYEES, Respondents.

No. SC 82520.

Supreme Court of Missouri, En Banc.

March 6, 2001.

As Modified April 24, 2001.

Rehearing Denied April 24, 2001.

Robert B. Hoemeke, Joseph E. Martineau, St. Louis, for appellant.

Katherine S. Walsh, James C. Owen, Chesterfield, Michael L. Blumenthal, Kansas City, for respondents.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, Diane Garber, Missouri Dept. of Ins., Jefferson City, for Amicus Curiae.

HOLSTEIN, Judge.

Pulitzer Publishing Company (Pulitzer) appeals from a judgment denying its motion to unseal court records relating to the compensation and bonuses paid to respondent Burleigh Arnold, the special deputy receiver (SDR) appointed to administer the Transit Casualty Company in Receivership (TCCR) liquidation. Pulitzer argues that TCCR failed to demonstrate compelling circumstances that justify the closure of open court records. TCCR responds that the receivership court in its discretion properly let the records remain sealed due to the real risk of damage to TCCR policyholders and creditors. After opinion by the Court of Appeals, Western District, this Court granted transfer. *Mo. Const. art. V, sec. 10.* The judgment of the circuit court is reversed, and the case remanded with directions to rehear the case under the presumption that court records should be open to the public absent a compelling justification for their closure.

## I.

Transit Casualty Company was a Missouri-chartered property and casualty insurance company licensed to write policies nationwide. In December 1985, the Circuit Court of Cole County declared Transit Casualty insolvent and placed the company into receivership under chapter 375, RSMo, creating TCCR. This receivership is perhaps the largest property and casualty insurance company liquidation in United States history, with approximately 200,000 creditors and liabilities of about $4,000,000,000. To date, TCCR has recovered about $1,000,000,000 from suits against reinsurers and others and continues to recover an estimated $100,000,000 per year. The liquidation has been ongoing for over 15 years and may take more than another decade to conclude.

The director of the department of insurance (Director) is the statutory receiver of TCCR for the purposes of this liquidation. *Sec. 375.954.1.*[1] There have been several directors since the inception of the receivership in 1985. One of these former directors, exercising his statutory authority under section 375.650.2, appointed the current special deputy receiver, Mr. Burleigh Arnold, in 1987. Mr. Arnold's statutory duty as SDR, under the supervision of the receivership court, is to maximize TCCR's assets for the ultimate benefit of and distribution to the policyholders and creditors of the insolvent company. *Sec. 375.650.1.* Mr. Arnold also manages the daily business of TCCR as the equivalent of a chief executive officer. His compensation is

1. All statutory citations are to RSMo 1994 unless otherwise indicated.

paid out of TCCR's assets and must be approved by the receivership court.

Pulitzer is the publisher of the *St. Louis Post–Dispatch*, a newspaper of general circulation in Missouri that often publishes articles about proceedings in Missouri courts, including coverage of this insurance receivership. In 1998, the receivership court permitted Pulitzer to intervene in the TCCR proceedings for the limited purpose of seeking access to certain *in camera* records containing information about Mr. Arnold's compensation, bonus, and contract terms.[2] These records and the records of other key TCCR employees are held *in camera* by the court, originally at the request of a former director. They are available to TCCR's creditors and policyholders, and the department of insurance, but not to the general public. As a precondition to disclosure, those with access to the records must agree not to disclose the information to others.

At the evidentiary hearing on the motion, Pulitzer called one witness, Mr. Steven Divine, chief financial examiner and director of the division of financial regulation at the department of insurance. Mr. Divine testified that in 1994, the department of insurance promulgated a regulation, 20 CSR sec. 200–15.100, requiring public disclosure of the compensation and bonuses paid to SDRs of insolvent insurance companies in Missouri. He also testified that TCCR was relieved from compliance by order of the receivership court in 1995, but that all other insurance company receiverships have satisfied the regulation. He added that it was his understanding that this public disclosure by the other receiverships had not resulted in financial harm to them. He further testified that in

his opinion public disclosure of Mr. Arnold's compensation would also not damage TCCR.

TCCR then called five witnesses who testified, essentially, that public access to information of Mr. Arnold's compensation would cause financial harm to TCCR's policyholders and creditors. Mr. Arnold himself was one of these witnesses called by TCCR. TCCR's claim is that reinsurers will use the information as leverage against TCCR during negotiations, and as an affirmative defense to TCCR's lawsuits brought to recover on reinsurance contracts. TCCR witnesses also testified that the records contain confidential employment information and that disclosure would violate the employees' privacy rights.

The receivership court ruled in favor of TCCR, finding "the evidence presented by Transit that the *in camera* orders were necessary to protect the Receivership's policy-holders, creditors and their assets to be credible and uncontradicted."

## II.

■ The right to appeal is purely statutory, and with certain exceptions this Court has jurisdiction of appeals by aggrieved parties from final judgments. *Sec. 512.020; Farinella v. Croft*, 922 S.W.2d 755, 756 (Mo. banc 1996). For our purposes, a party is aggrieved within the meaning of the statute when "it suffers an infringement or denial of some legal right." *Jackson County Bd. of Election Comm'rs. v. Paluka*, 13 S.W.3d 684, 687 (Mo.App.2000). TCCR alleges that Pulitzer is not an aggrieved party. As a member of the public, however, Pulitzer had an inherent interest in the court records that

---

**2.** Some of the records Pulitzer originally requested contain information not only about Mr. Arnold's compensation package, but also about the compensation packages of other key employees. In this appeal Pulitzer seeks only Mr. Arnold's records; therefore, it is not necessary to address respondents' arguments about the records of the other employees.

is recognized by the common law. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). It follows logically that Pulitzer is the aggrieved party when its very directed attempt to unseal public records in which it has a legal interest is denied. The court's order disposed of one complete claim as to one party, Pulitzer, and otherwise qualified as a judgment. *Committee for Educ. Equality v. State,* 878 S.W.2d 446, 451 (Mo. banc 1994); *Rule 74.01.*

■ Whether the order in question is a final judgment is the more difficult question. A final judgment is normally defined as one that resolves "all issues in a case, leaving nothing for future determination." *Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997). Its converse is an interlocutory judgment-one that is defined as "not final" and that generally decides some point or matter between the commencement and the end of a suit, but that is not a final decision of the whole controversy. *Albright v. Kelley,* 926 S.W.2d 207, 210 (Mo.App.1996). The order here would normally be an interlocutory judgment. The trial court is free at any time while it retains jurisdiction over the receivership to reconsider its decision and open some or all of the records. All parties agree that innumerable claims by and against Transit Casualty remain pending with numerous issues that still must be resolved with respect to numerous parties in interest.[3]

■ *Ainsworth v. Dalton,* 694 S.W.2d 833, 835 (Mo.App.1985),[4] is cited by Pulitzer and the concurring opinion in support of the proposition that the judgment in this case is final even though the receivership proceedings are ongoing. In *Ainsworth,* the court of appeals recited the correct rule, noted above, when it found that an original initial order of compensation was not a final judgment:

> A decree is final when it fully decides and disposes of the whole merits of the cause, and leaves no further questions therein for the future judgment of the court.... In order to be final the decree must be complete and certain ...; it must show intrinsically and distinctly, and not inferentially, that the matter has been adjudicated.

694 S.W.2d at 835, citing *State ex rel. Wagner v. Ruddy,* 582 S.W.2d 692, 694–95 (Mo. banc 1979). When it came to the order before it granting additional compensation, however, the *Ainsworth* court summarily and paradoxically declared this second order a final judgment, citing no authority other than section 512.020. *Id.* The holdings of this Court both before and after *Ainsworth* hold that a judgment is not usually final unless it disposes of all issues as to all parties. *State ex rel. Schweitzer v. Greene,* 438 S.W.2d 229, 231 (Mo. banc 1969); *Gibson v. Brewer,* 952 S.W.2d 239, 244. Because of its internal inconsistency, and because *Ainsworth* is

---

**3.** The concurring opinion's assertion that the judgment here "resolved the only issue in the case" is simply not an accurate statement of the record. Moreover, Pulitzer's unquestionable status as an intervenor in the receivership action belies the assertion that Pulitzer's claim here is a lawsuit "independent of the receivership" that is "not part of the receivership proper." *See Rule 52.12.*

**4.** Pulitzer also cites *Angoff v. Casualty Indemnity Exchange,* 963 S.W.2d 258 (Mo.App. 1997); *In re Transit Casualty Company,* 900 S.W.2d 671 (Mo.App.1995); *In re Search Warrant for Secretarial Area—Gunn,* 855 F.2d 569 (8th Cir.1988); *Avidan v. Transit Casualty Co.,* 20 S.W.3d 521 (Mo. banc 2000); and *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London,* 963 S.W.2d 392 (Mo.App.1998) for the proposition that section 512.020 alone permits an appeal from a judgment that disposes of less than all parties and all issues in a receivership case. None of these cases directly address the issue.

inconsistent with these precedents, it has effectively been overruled.

■ As a general matter, the proper course for an aggrieved party without a final judgment is ordinarily by extraordinary writ. *Mo. Const. art. V, sec. 4; State ex rel. Conran v. Williams,* 96 Mo. 13, 8 S.W. 771, 773 (1888) (writ of mandamus to compel the inspection of poll records); *State ex rel. Castillo v. Clark,* 881 S.W.2d 627, 628 n. 1 (Mo. banc 1994). Parties generally may seek a remedial writ in an appropriate court without intervening as a party in the main action. *West County Care Ctr., Inc. v. Missouri Health Facilities Review Comm.,* 773 S.W.2d 474, 477 (Mo.App.1989). The relator "should show some interest in the records which he seeks to inspect, and it may well be doubted whether the writ would in any case be allowed upon the relation of a mere stranger." *State ex rel. Conran v. Williams,* 96 Mo. 13, 8 S.W. 771 at 773. Where, as here, the duty sought to be imposed on a public official is one owing to the entire public, the interest necessary to establish standing to seek a writ is exceedingly low. *State ex rel. Taylor v. Wade,* 360 Mo. 895, 231 S.W.2d 179, 182 (1950).

■ The rules and practices just noted apply generally; however, the case before us is not one governed by common law or general statutory rules. This is an insurance insolvency receivership proceeding, and the provisions of chapter 375 prevail over the common law and any general statutes because the legislature has specifically set forth the substantive law and procedures to be followed. *In re Transit Casualty Co.,* 900 S.W.2d 671, 675 (Mo. App.1995). Though the provisions of chapter 375 are said to be a "self-contained and exclusive statutory scheme" and "complete" in themselves, where applicable, *Angoff v. Holland–America,* 969 S.W.2d at 352; *O'Malley v. Continental Life Ins. Co.,* 335 Mo. 1115, 75 S.W.2d 837, 838 (1934) (construing sec. 5945 (1929)), it is equally true that where the insolvency code is silent, courts are to apply the common law and general statutory provisions. *Melahn v. Continental Sec. Life Ins. Co.,* 793 S.W.2d 425, 428 (Mo.App.1990). For example, *Robertson v. Manufacturing Lumbermen's Underwriters,* 346 Mo. 1103, 145 S.W.2d 134, 136 (1940), held that though the insurance code generally applies, it is not to be construed to limit the right to appeal; and thus, the general provisions of the predecessor of section 512.020 were applicable in determining aggrieved party status.

■ Pulitzer's "final judgment" required for its right to appeal under section 512.020 is found in the complete and exclusive provisions of chapter 375. TCCR's brief concedes that the order at issue was entered pursuant to the broad powers granted receivership courts to enter orders pursuant to 375.1155.1. Section 375.630 defines "final judgment" in the context of delinquency proceedings like this one, providing that when "the finding be for the plaintiff [on a petition for liquidation], the court shall render such orders, decrees and judgments as are allowed by sections 375.1150 to 375.1246. Such decree or judgment shall, for all purposes of an appeal, be considered a final judgment...." *Sec. 375.630.4.* Though the section goes on to specifically grant a right to appeal to the insolvent insurer (the defendant), it does not prohibit others aggrieved by final judgment under sections 375.1150 to 375.1246 from appealing under section 512.020. The breadth of decrees and judgments allowed by sections 375.1150 to 375.1246 in a proceeding such as this is exceedingly wide, and any ambiguity present should be resolved with an eye towards liberally construing statutes

permitting the right of appeal. *Robertson,* 346 Mo. 1103, 145 S.W.2d 134 at 136.

## III.

 It is undisputed in this case that there is a common law right of public access to court and other public records. On appeal, abuse of discretion is the correct standard of review as drawn from those courts that have previously recognized the presumption. *See Siedle v. Putnam Invest., Inc.,* 147 F.3d 7, 9 (1st Cir. 1998); *United States v. Mitchell,* 551 F.2d 1252, 1260 (D.C.Cir.1976). Given the presumption in favor of open records, an abuse of discretion is present when trial court orders inexplicably seal court records, do not articulate specific reasons for closure, or do not otherwise demonstrate a recognition of the presumptive right of access.

In Missouri, section 109.180 codifies the presumption in favor of openness, stating that: "Except as otherwise provided by law, all state, county and municipal records kept pursuant to statute or ordinance shall at all reasonable times be open for a personal inspection by any citizen of Missouri, and those in charge of the records shall not refuse the privilege to any citizen." This Court has not until now had the occasion to articulate a precise standard governing this open records policy. That perhaps explains why the receivership court in this case did not appear to insist that TCCR show truly compelling circumstances justifying closure of records that are presumptively open. The trial court may indeed have fully considered TCCR's considerable task in overcoming the presumption of openness. It is simply not clear from the face of the trial court's order, however, that it properly applied the rule.

 The public policy behind open records and the public right of access is well-established in Missouri. The rule has been mandated legislatively in numerous contexts. *See, e.g., sec. 610.011* ("It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law."); *sec. 610.021(13)* (providing that names, salaries, and other information about public officials and employees are generally open); *sec. 28.070* (secretary of state's records open for public inspection); *sec. 36.420* (subject to regulatory exceptions, state personnel records are open). "In all instances where, by law or regulation, a document is required to be filed in a public office, it is a public record and the public has a right to inspect it." *State ex rel. Kavanaugh v. Henderson,* 350 Mo. 968, 169 S.W.2d 389, 392 (1943); *See also Disabled Police Veterans Club v. Long,* 279 S.W.2d 220, 223 (Mo.App.1955); *Hyde v. City of Columbia,* 637 S.W.2d 251, 258 (Mo.App.1982). "Citizens of Missouri have the right to inspect and copy any public record even if there is no apparent 'legal interest to be subserved....' " *State ex rel. Gray v. Brigham,* 622 S.W.2d 734, 735 (Mo.App.1981).

 TCCR's most prominent argument is that creditors and policyholders, whose pecuniary interests are directly affected by the decisions of the receivership court, already have access to the SDR compensation information. TCCR claims that the public has no right to inspect the court records at issue because the public has no interest in the subject matter of these proceedings. Its interest in the subject matter of this litigation is irrelevant, however. The public's right to inspect court and other public records comes not from any personal interest in the subject matter of the records. Rather, the right stems from the public's presumed interest in the integrity and impartiality of its gov-

ernment. 622 S.W.2d at 735; *See 3 W. Blackstone, Commentaries 372; M. Hale, The History of the Common Law of England 343–345 (6th ed. 1820).* Contrary to TCCR's assertions, open records do not simply accommodate the public's amusement, curiousity, or convenience. Instead, it is simply beyond dispute that public records are freely accessible to ensure confidence in the impartiality and fairness of the judicial system, and generally to discourage bias and corruption in public service. "Without publicity, all other checks are insufficient...." *1 J. Bentham, Rationale of Judicial Evidence 524 (1827).*

In accordance with this long-established legal tradition, this Court in 1998 adopted Court Operating Rule 2, (formerly Administrative Rule 2) which governs public access to the records of the judicial department. It also provides for exceptions to the general rule of openness. The general policy of Rule 2 is set out in Rule 2.02, which states in pertinent part:

> Records of all courts are presumed to be open to any member of the public for purposes of inspection or copying during the regular business hours of the court having custody of the records. The policy does not apply to records that are confidential pursuant to statute, court rules or court order; judicial or judicial staff work product; memoranda or drafts; or appellate judicial assignments.

Although the rule imposes a presumption that records are open to the public, there is an express exception for records, like those in this case, that are confidential pursuant to court order. Nevertheless, the presumption of openness is intended to inform the decision of whether to seal the records in the first place, or to unseal the records if the justification for sealing the records abates. The policy supporting the presumption as reflected in the rule merits

repeating: Justice is best served when it is done within full view of those to whom all courts are ultimately responsible—the public.

■ On the basis of that policy, and considering the substantial authority from other courts, *see, e.g., San Jose Mercury News v. United States Dist. Ct.,* 187 F.3d 1096, 1102 (9th Cir.1999) (recognizing a strong presumption in favor of public access that can be overcome only by "compelling reasons and specific factual findings"); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 781 (3d Cir.1994) (recognizing the "strong presumption of access"); *In re Knoxville News–Sentinel Co., Inc.,* 723 F.2d 470 (6th Cir.1983) (discussing the "long-established legal tradition" of "the presumptive right of the public to inspect and copy judicial documents and files"); *United States v. McVeigh,* 119 F.3d 806, 811 (10th Cir.1997) (recognizing the presumption of public access); *Boston Herald, Inc. v. Sharpe,* 432 Mass. 593, 737 N.E.2d 859, 868 (2000) (explaining that "the presumption of public access facilitates [public scrutiny of] the workings of public agencies"); *Hammock v. Hoffmann–LaRoche, Inc.,* 142 N.J. 356, 662 A.2d 546, 556 (1995) (discussing "the strong presumption of access"), this Court affirms, subject to the exceptions of Court Operating Rule 2, that there is a presumption in favor of the public's right of access to court records and that the presumption cannot be overcome absent a compelling justification that the records should be closed.

IV.

■ There are important exceptions that limit the presumption of open records when sufficiently important interests outweigh the public's right of access. Court Operating Rule 2 broadly provides for certain exceptions to the rule of open records. Where there are higher interests

favoring nondisclosure, courts and the legislature have routinely seen fit to close some public records. *See, e.g., sec. 610.021* (certain closed records and meetings of a governmental body); *sec. 211.321.1* (juvenile records); *sec. 30.600* (financial statements filed in state treasurer's office); *Hyde v. City of Columbia*, 637 S.W.2d at 258 (victim of abduction's name and address); *Ex parte McClelland*, 521 S.W.2d 481 (Mo.App.1975) (police informant's identity); *State ex rel. Callahan v. Kinder*, 879 S.W.2d 677 (Mo.App.1994) (prison inmate medical records). In order to close court or other public records, however, a court in its order must identify specific and tangible threats to important values in order to override the importance of public right of access. *See United States v. Antar*, 38 F.3d 1348, 1351 (3rd Cir.1994). Vague or uncertain threats claimed by one party normally would not justify closure.

■ In the case before us the trial court found it sufficient to state, without further elaboration, that TCCR's evidence was "credible and uncontradicted." This summary treatment of the issues, along with other indicia, suggests to this Court that the trial court did not correctly apply the presumption in favor of open records. The court did not articulate any of the recognized exceptions in Rule 2.02 or any other sound justification for closed public records. There is no finding to suggest that disclosure of the SDR's compensation would require disclosure of any sensitive information; a nonexclusive list would include trade or business secrets, settlements of contested competing claims, defamatory or scandalous material, private psychiatric, medical or academic records of non-parties or other privileged communications. *State ex rel. State Bd. of Pharmacy v. Otto*, 866 S.W.2d 480, 485 (Mo.App.1993) (work product); *State ex rel. Wright v. Campbell*, 938 S.W.2d 640, 643 (Mo.App. 1997) (trade secret); *Tuft v. City of St. Louis*, 936 S.W.2d 113, 116 (Mo.App.1996) (settlement agreement). Also troubling is the sequence in which the parties presented the evidence-first Pulitzer, and then TCCR-suggesting that the trial court may have treated Pulitzer as the party with the burden of proof. *Auto–Owners Ins. Co. v. McGaugh*, 617 S.W.2d 436, 445 (Mo.App. 1981). The rule, of course, is quite to the contrary.

■ Further indicating that the trial court did not properly apply the presumption in favor of open records is the fact that TCCR's pleading did not allege specific factual circumstances that justify closure.[5] We acknowledge that TCCR presented five witnesses who speculated about the possible damage to TCCR's policyholders and creditors were the compensation records to be disclosed. The trial court nevertheless should not have ignored the fact that TCCR's pleading is vague in the extreme. Missouri rules of civil procedure demand more than mere conclusions that the pleader alleges without supporting facts. *Sofka v. Thal*, 662 S.W.2d 502, 508 (Mo. banc 1983); *Rule 55.05*. In its one pleading before the court, TCCR never states the particular facts and circumstances of this case that justify closure of these records. Some explanation in one's pleading beyond vague assertions of harm is required. This is especially true where, as here, the trial court does not expressly

---

5. Neither party's pleading is a model. Instead of attaching its initial pleading to its motion to intervene, as required by Rule 52.12(c), Pulitzer included its pleading in the body of its motion. TCCR did not object to this, but instead filed its response to the pleading without characterizing it as an answer to a petition. Since the parties and the trial court treated these as the petition and answer required by Rule 55.01, so does this Court.

rely on any particular reason of the several alluded to by TCCR.

■ In its brief, TCCR argues that it is a private company in receivership, and, as such, is not subject to the general rules that apply to public entities. TCCR also argues in its brief that the broad grant of authority to the receivership court encompasses the unqualified power to seal records. *Sec. 375.1182.3.* Neither of these claims may serve as a basis for the trial court to close the records.

As to the privacy claim, TCCR confuses the private quality of certain entities with the inherently public nature of court records. It is clear that private entities that involve themselves in some way with the judicial system are, in most cases, open to public scrutiny. That is, for example, why there are privileges in place to protect certain sensitive information from discovery requests. *See, e.g., Welsh v. Dean Witter Reynolds Organization, Inc.,* 657 S.W.2d 27, 30 (Mo.App.1983). Regardless, the receivership and the SDR himself are more than a mere private employer or employee. The SDR was appointed by a public official, the Director, and his employment was approved by the court. *Secs. 375.650.2, 375.954.3, 375.1176.2.* His compensation package was fixed by the Director and, that too, was approved by the court. *Sec. 375.954.3.* His appointment as SDR gives him all of the powers of the statutory receiver (the Director) and also subjects him to all of the duties imposed on the statutory receiver. *Id.* Throughout the liquidation proceedings, he is under the joint supervision of the court and the Director, and every action or omission connected to TCCR is subject to their approval. *Secs. 375.650.2, 375.740.2 and 375.1176.1.* In sum, the Director's official involvement in the affairs of TCCR, the conditions of the SDR's employment with TCCR, and the fair characterization of his employment, and the receivership, itself, demonstrate TCCR is at least quasi-public.

Since the SDR is at the very least a quasi-public official, his rights of privacy are less than that of an average citizen. All public employees enter public service knowing that their names, positions, compensation, and terms of service will be accessible by any person. *Sec. 610.021(13).* In a Sunshine Law context, it has been said that: "Public employees may not wish their employment contracts known, but this personal desire is insignificant when contrasted to the public's interest.... [T]he disclosure of employment contracts is not likely to significantly jeopardize the privacy of employees." *North Kansas City Hosp. Bd. of Trustees v. St. Luke's Northland Hosp.,* 984 S.W.2d 113, 122 (Mo.App.1998). Neither the SDR nor TCCR cite, and we are not aware of, any policy to the contrary merely because the SDR oversees an insurance receivership or resides out of state.

■ TCCR also points to section 375.1155.1, which gives the receivership court broad power to grant "such orders as may be necessary and proper to prevent ... threatened or contemplated action that might lessen the value of insurer's assets or prejudice the rights of policyholders, creditors or shareholders...." While the provisions of the insolvency code do indeed prevail over the common law and any general statutes, *In re Transit Casualty Co.,* 900 S.W.2d at 675, the insolvency code does not guide this particular receivership court with respect to the policies and presumptions of open records. Where the insolvency code is silent, the common law and general statutory authority should be applied. *Melahn,* 793 S.W.2d at 428.

## V.

This Court holds that case records are presumptively open to public inspection

and copying absent a compelling justification for their closure. It is up to the objecting party to plead and prove convincing reasons to rebut the presumption of openness. Furthermore, when a court exercises its discretion pursuant to Rule 2 and removes certain records from public view, the court's order must cite the specific reasons for closure upon which it relies. Here, we must assume that the trial court did not apply the proper rule because it made no specific findings informing the public why the SDR's salary and contract information should remain closed. Furthermore, since it did not plead its reasons for closure with any specificity, TCCR forces us to speculate as to the trial court's reason for closing the records since we are unable to presume that the trial court relied on TCCR's pleading.

Even though the insurance insolvency code is a self-contained and exclusive statutory scheme, there is nothing in the code that mandates the closure of these records. Thus, courts must turn to the common law presumption that the records of courts are open to the public. The circuit court's judgment is reversed and the case is remanded for rehearing giving due regard to the presumption that the court records in question should be open to the public absent a compelling justification that the records remain closed.

WHITE and BENTON, JJ., and GARRISON, Sp. J., concur.

LIMBAUGH, J., concurs in separate opinion filed.

WOLFF, J., concurs in opinion of LIMBAUGH, J., PRICE, C.J., and LAURA DENVIR STITH, J., not participating.

LIMBAUGH, Judge, concurring.

I concur in the majority's analysis and conclusion on the merits of the case, but I write separately to suggest a different approach to the "final judgment" issue.

Section 512.020, RSMo 1994, governs appeals in civil cases generally and gives a right to appeal to any party "aggrieved" by a final judgment of the trial court. The majority correctly determines that Pulitzer is an aggrieved party because its "attempt to unseal public records in which it has a legal right was denied." This is tacit recognition that Pulitzer has a corresponding cause of action, ancillary to the underlying receivership, to enforce that legal right.

Before an aggrieved party with an enforceable right may bring an appeal, there must be a final judgment disposing of all issues and all parties in the case. *Green v. City of St. Louis*, 870 S.W.2d 794, 798 (Mo. banc 1994). The majority holds that the judgment in this case is only a final judgment by resort to section 375.630.4, RSMo 1994. I disagree. Pulitzer intervened for one purpose, to request rescission of the orders holding the SDR's records *in camera*. The trial court's denial of that request is dispositive of the only issue in the case and is conclusive as to all parties, thus satisfying the requirements for a final judgment. The majority's determination that suits of this sort are not final because the liquidation proceeding is ongoing not only contradicts earlier cases, *see Ainsworth v. Dalton*, 694 S.W.2d 835 (Mo.App. 1989); *Angoff v. Casualty Indemnity Exchange*, 963 S.W.2d 258, 262 n. 5 (Mo.App. 1997), but also disregards other appeals from cases brought to contest other issues in this same receivership, *see Avidan v. Transit Cas. Co.*, 20 S.W.3d 521 (Mo. banc 2000); *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 963 S.W.2d 392 (Mo.App.1998). These cases all stand for the proposition that a final judgment for purposes of litigation ancillary to the receivership, that is, litigation brought by or against the receivership, is separate and

independent from the final judgment eventually to be entered regarding the fate of the receivership, itself. The compelling logic of the proposition, which the majority now rejects, is that litigation ancillary to the receivership may be resolved without waiting months and years until the underlying receivership is terminated.

The majority also maintains that the judgment was not final because it was subject to change. By entry of the judgment, however, as opposed to a mere ruling on an issue in the case or an order pertaining to less than all the issues in the case, the trial court made clear that its decision in the case was *not* subject to change. Indeed, judgment was entered for the very reason that the decision was final, rather than interlocutory. Furthermore, as noted, the trial court's judgment resolved the only issue in the case and was conclusive as to all parties. That alone makes the judgment final.

A more fundamental problem with the majority's determination that suits of this sort are not final because the receivership/liquidation proceeding is ongoing and the judgment entered was interlocutory is that the majority overlooks the nature of Pulitzer's lawsuit. Although Pulitzer is an intervening party in the receivership, Pulitzer's lawsuit, which sets out a discrete cause of action, is independent of the receivership. Though the lawsuit is ancillary to the receivership, it is not part of the receivership proper. Therefore, it is irrelevant that the receivership itself is ongoing and that rulings regarding the receivership are subject to change. Once the receivership court enters judgment on Pulitzer's independent lawsuit, the judgment is final for purposes of appeal.

In any event, the majority's solution to the perceived final judgment problem is to provide Pulitzer a remedy by way of a writ of mandamus, or direct appeal under section 375.630.4. Although Pulitzer may have availed itself of a writ of mandamus, it would not have been precluded from taking a direct appeal in the alternative, if, of course, the final judgment problem had been resolved in its favor. On the other hand, the majority's reliance on section 375.630.4, RSMo 1994, to establish a "final judgment" is altogether inappropriate.

The majority holds that an appeal lies only as a result of the peculiar appeal provisions in section 375.630.4 relevant to delinquency proceedings. This holding, as I understand the majority's analysis, is based on a construction of section 375.630.4 that recognizes a new and seemingly unencumbered right to appeal from *any* decree or judgment in the context of insurance company insolvency proceedings, for *any* party, including policyholders, shareholders, creditors, claimants, employees, and reinsurers. Tellingly, the parties did not cite this section in their briefs or argument, and presumably they understood, as do I, that the language of the statute does not support such a liberal construction, but rather is limited to the defendant insurance company's right to appeal.

In context, section 375.630 and its subsections relate back to section 375.570, which provides that insolvency proceedings "shall be commenced by filing a verified petition in the name of the director, as plaintiff, against the insurer, proceeded against as defendant. . . ." Section 375.630 then comes into play, outlining the evidentiary effect of "certified copies of the statement made by the defendant, or of reports of examinations of the defendant . . .", which create a rebuttable presumption of the facts regarding the financial condition of the insurance company. Sec. 375.630.1. The court then must decide the case as soon as possible, no later than fifteen days after the presentation of the evidence.

Sec. 375.630.2. "If the finding be for the defendant, it shall be lawful for the director to appeal the case." Sec. 375.630.3. The next subpart, the one at issue, states:

If the finding be for the plaintiff, the court shall render such orders, decrees and judgments as are allowed by sections 375.1150 to 375.1246 [which comprise the Insurers Supervision, Rehabilitation and Liquidation Act]. Such decree or judgment shall, for all purposes of an appeal, be considered a final judgment, and the defendant may appeal from the same as in other civil cases....

Sec. 375.630.4. The legislature's identification of "the defendant" as the party with the right of appeal removes Pulitzer from the operation of the statute. The defendant is the insurance company that the plaintiff director is examining, sec. 375.570.2, and it is against the defendant insurance company that the court "shall render such orders, decrees and judgments as are allowed by sections 375.1150 to 375.1246." Even if it can be said that the statute is addressed to defendants other than the insurance company, in no sense is Pulitzer a "defendant" in this case; it is instead a plaintiff/intervenor. Therefore, section 375.630.4 does not provide a basis for Pulitzer's appeal.

I have one final complaint with the majority's analysis. The majority's assertion that no final judgment involving a receivership may be entered unless authorized under section 375.630.4 is based on the premise that the insurance company insolvency code is exclusive, complete, and self-contained. But, if that premise is correct, then the majority improperly relies on section 512.020, which is a source outside the code, to give Pulitzer "aggrieved party" status, which is no less a requirement to perfect the appeal than the requirement for a final judgment. The better analysis is that the insolvency code is not exclusive,

complete, and self-contained in relation to lawsuits that are independent of the receivership proper and that section 375.630.4 is not the exclusive authority for a final judgment in such cases. In fact, that analysis is required under section 375.600.1, which states: "The pleadings and proceedings, insofar as not otherwise regulated by sections 375.570 to 375.750, 375.950 to 375.990 and 375.1150 to 375.1246, shall be as in other civil causes."

In sum, I would hold that the judgment entered against Pulitzer was a final judgment for the sole reason that it disposed of the only issue in the case and was conclusive as to all parties.