

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| PHILLIP WEEKS, | ) | No. ED112624 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1922-CC11987 |
| | ) | |
| CITY OF ST. LOUIS, | ) | Honorable Joan L. Moriarty |
| | ) | |
| Respondent. | ) | Filed:  January 28, 2025 |

Phillip Weeks ("Plaintiff") appeals the judgment, following a bench trial, in favor of the City of St. Louis ("City") on Plaintiff's petition seeking an injunction requiring the City to produce certain records and alleging violations of Missouri's Sunshine Law, section 610.010, et seq.[1]  We affirm.

### I.       BACKGROUND

In July 2019, Plaintiff sent an email to the St. Louis Metropolitan Police Department ("SLMPD")[2] requesting traffic stop data kept by SLMPD pursuant to section 590.650[3] ("July 2019 request" or "request").  Specifically, Plaintiff requested production of "electronic copies of the . . . [f]iles of the databases containing data generated from vehicle stop forms for 2014

---

[1] All statutory references are to RSMo 2016.

[2] It was undisputed at trial that SLMPD is a division of the City's Department of Public Safety.

[3] Section 590.650 requires police officers to report certain information to their employer each time the officer stops a motor vehicle driver.  *Weeks v. St. Louis County*, 696 S.W.3d 333, 336, 336 n.3 (Mo. banc 2024) (citing section 590.650.2(1)-(10)).  This information is then compiled by law enforcement agencies into an annual report and submitted to the attorney general.  *Weeks*, 696 S.W.3d at 337 (citing section 590.650.3-4).

through and including 2018, including officer PINs/DSNs[.]" Plaintiff clarified that he was requesting "files containing the databases (in worksheet, ie [sic] [E]xcel workbook formatting) created from the raw data transmitted upon completion of the vehicle stop forms."

Following numerous email exchanges between Plaintiff and SLMPD employees attempting to understand and clarify Plaintiff's request, SLMPD informed Plaintiff in August 2019 that it had no existing records responsive to his request. Instead, SLMPD offered to provide Plaintiff with individual "Traffic Analysis Reports" from 2016 through 2018 to satisfy his request, which Plaintiff did not accept.

Plaintiff subsequently filed suit in November 2019, asking the trial court to, *inter alia*, require the City to produce the records requested by Plaintiff and find that the City committed a knowing or purposeful violation Missouri's Sunshine Law. A bench trial was held over three days in June and July 2023, and included testimony from Plaintiff, two witnesses employed by SLMPD at the time of Plaintiff's July 2019 request, and Plaintiff's expert witness specializing in database analytics. Following the trial, the court entered a judgment ruling the City did not violate Missouri's Sunshine Law by failing to fulfill Plaintiff's July 2019 request, finding the City "[did] not hold or maintain an existing record responsive to Plaintiff's specific request." Plaintiff then filed a motion for new trial, which the trial court denied. This appeal followed.[4]

## II.    DISCUSSION

Plaintiff raises a single point on appeal, arguing the trial court's judgment in favor of the City was against the weight of the evidence adduced at trial. Plaintiff specifically takes issue with the court's conclusion that the City did not hold or maintain an existing record responsive to his request.

---

[4] To avoid unnecessary repetition, additional facts relevant to Plaintiff's point on appeal will be set forth in Section II.B. of this opinion.

## A. Standard of Review

When reviewing a court-tried case, this Court will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). We are primarily concerned with whether the trial court reached the correct result, not the route taken to reach it; accordingly, we will affirm the trial court's judgment when it is sustainable based on any ground supported by the record. *Halper v. Halper*, 604 S.W.3d 904, 908-09 (Mo. App. E.D. 2020).

When reviewing a challenge to a judgment as against the weight of the evidence, this Court acts with caution and will only reverse in rare cases when there is a firm belief that the judgment is wrong. *Ivie*, 439 S.W.3d at 205-06. We will only find a trial court's judgment to be against the weight of the evidence "if the [] court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id*. at 206. "When the evidence poses two reasonable but different conclusions, [we] must defer to the [trial] court's assessment of that evidence." *Id*. Furthermore, we defer to the trial court's findings of fact when the factual issues are contested and when the facts turn on credibility determinations. *Id*.

## B. Analysis of Plaintiff's Sole Point on Appeal

Plaintiff's sole point on appeal argues the trial court's judgment in favor of the City was against the weight of the evidence adduced at trial. Plaintiff claims the City was in possession of records responsive to his July 2019 request primarily based upon the City's responses to Plaintiff's requests for admissions, which were admitted at trial. These admissions provided SLMPD had four separate ".txt data file[s]" in its "possession, custody or control" at the time of Plaintiff's request, and that SLMPD also received the same four data files "in .csv format prior to

3

November 13, 2019." Plaintiff received these four data files in .csv format from the City during discovery, and he further supports his argument by highlighting his testimony at trial stating "the formatting of the[se] data files was exactly what [he] was requesting." Plaintiff argues the City's admissions as to SLMPD's possession of the .csv data files combined with the "plain language" of his July 2019 request show the trial court's judgment in favor of the City was against the weight of the evidence.

Plaintiff, however, entirely disregards the evidence in the record from which the trial court could have reasonably found the City did not possess an existing record responsive to his July 2019 request. *See id*.; *see also O'Gorman & Sandroni, P.C. v. Dodson*, 478 S.W.3d 539, 544 (Mo. App. E.D. 2015) (an argument that the trial court's judgment was against the weight of the evidence must include identification of all favorable evidence submitted at trial that would support the court's finding). Plaintiff's request specified that he wanted the data in "worksheet" or "[E]xcel workbook" format, and an SLMPD employee ("Employee") who worked on Plaintiff's request testified at trial that he understood Plaintiff to be requesting data files "specifically in Excel format." Plaintiff confirmed at trial that he "specifically wanted [the data] in Excel workbook format[]." Employee testified there were "no Excel files containing [the requested] data" and concluded "that the data in the format . . . requested [by Plaintiff] did not exist." A systems development manager employed by SLMPD at the time of Plaintiff's July 2019 request testified that "[SLMPD did] not maintain an Excel spreadsheet for traffic analysis or traffic stop data," and she "would not have considered [the .csv files] responsive to [Plaintiff's] request." Additionally, Plaintiff's expert witness explained at trial, when questioned about the specific .csv files at issue in this case, that "a [.csv] file is at [its] base a text file with commas that separate the value[s]." Finally, Plaintiff testified that "[.]csv" files "are easily made

4

into an Excel sheet or a spreadsheet of almost any format," indicating the files SLMPD possessed were not in a format responsive to the specific language of Plaintiff's request.

This Court must defer to the trial court's assessment of the evidence and any findings of fact that turn on credibility determinations. *See Ivie*, 439 S.W.3d at 206. While Plaintiff presented evidence at trial showing the .csv data files in the City's possession were formatted as he requested, testimony from City employees supported the opposite conclusion based on their interpretation of Plaintiff's request and their assessment of the data files in the City's possession. *See id.*; *see also Spradlin v. City of Fulton*, 982 S.W.2d 255, 263 (Mo. banc 1998) ("[w]hile we may have weighed the evidence differently and arrived at a different conclusion than the trial court, we must adhere to our standard of review and are not free to substitute our own judgment for that of the trial court"); *Hynes v. Missouri Department of Corrections*, 689 S.W.3d 516, 528-29 (Mo. App. W.D. 2024) (a trial court is free to believe or disbelieve witness testimony regarding their understanding of a request made under Missouri's Sunshine Law). Additionally, portions of the testimony from Plaintiff and Plaintiff's expert witness also supported the trial court's conclusion that the data files in the City's possession were not responsive to Plaintiff's request. Accordingly, the trial court's determination that the City did not hold or maintain an existing record responsive to Plaintiff's request was one of two reasonable but different conclusions supported by the record in this case. *See Ivie*, 439 S.W.3d at 206.

Additionally, we recognize the well-established public policy in Missouri mandating that records of governmental bodies be open to the public. *See Transit Cas. Co. ex rel. Pulitzer Publishing Co. v. Transit Cas. Co. ex rel. Intervening Employees*, 43 S.W.3d 293, 300 (Mo. banc 2001); section 610.011.1 ("[i]t is the public policy of this state that . . . records . . . of public governmental bodies be open to the public unless otherwise provided by law"); *see also* section

610.029.1 ("[a] public governmental body is strongly encouraged to make information available in usable electronic formats to the greatest extent feasible"). However, anyone seeking access to public records must communicate their request in a way that allows a reasonably competent custodian of the records to identify the specific records requested, and a governmental body must be able to rely on the request as it was actually made. *Weeks v. St. Louis County*, 696 S.W.3d 333, 340 n.10 (Mo. banc 2024); *Anderson v. Village of Jacksonville*, 103 S.W.3d 190, 196 (Mo. App. W.D. 2003). In this case, Plaintiff's July 2019 request specifically asked for data in "worksheet" or "[E]xcel workbook" format, and evidence adduced at trial supports the reasonable conclusion that the City did not possess the requested data in the requested format. *See id.*; *Ivie*, 439 S.W.3d at 206. On the record before us, we are not convinced that Plaintiff's request for data in a specific format, i.e., "worksheet" or "[E]xcel workbook" format, when relied on by a reasonably competent custodian of records, would allow for identification of files in a different format. *Weeks*, 696 S.W.3d at 340 n.10; *Anderson*, 103 S.W.3d at 196.

Based on the foregoing, the trial court could have reasonably found, from the record at trial, that the City did not hold or maintain an existing record responsive to Plaintiff's July 2019 request. *See Ivie*, 439 S.W.3d at 206. Accordingly, the trial court's judgment was not against the weight of the evidence. *See id.* Plaintiff's sole point on appeal is denied.

## III. CONCLUSION

The trial court's judgment in favor of the City is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Michael S. Wright, J., concurs.
John P. Torbitzky, P.J., dissents in a separate opinion.

6



# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

PHILLIP WEEKS, ) No. ED112624
)
  Appellant, ) Appeal from the Circuit Court
) of the City of Saint Louis
v. ) 1922-CC11987
)
CITY OF SAINT LOUIS, ) Honorable Joan L. Moriarty
)
  Respondent. ) Filed: January 28, 2025

### Dissenting Opinion

Missouri's Sunshine Law provides, "It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." Section 610.011.1, RSMo 2016.[1] It is antithetical to this policy to allow public bodies to withhold electronically stored data simply because the request did not ask for the data in the precise format in which it is stored. There is no dispute between the parties that the City possessed the data requested in this case. Nonetheless, the principal opinion holds that the City did not violate the Sunshine Law in withholding that data. Because the principal opinion allows the City to withhold documents that should be open to the public for a reason that is not "otherwise provided by law," I respectfully dissent.

---

[1] All statutory references are to RSMo 2016.

**Background**

In July 2019, Weeks sent a Sunshine Law request to the St. Louis Metropolitan Police Department asking it "to produce electronic copies of the … [f]iles of the databases containing data generated from the vehicle stop forms for 2014 through and including 2018, including PINs/DSNs, *that are kept pursuant to … § 590.650*." (Emphasis added). Weeks' request apprised the Department he had been in touch with the Regional Justice Information System ("REJIS") and REJIS informed him that the Department transmitted this data to REJIS, which then stored it in a database.[2] Weeks asked the Department to produce that database. Weeks clarified that "this open records request is for files containing the databases (in worksheet, ie excel workbook formatting) created from the raw data transmitted upon completion of the vehicle stop forms."

The Department acknowledged receipt of Weeks' request. It subsequently responded that Weeks' request would be delayed for several weeks because the records search was taking longer than anticipated. Weeks responded to the Department, stating,

> For clarification, my request is not for the vehicle stop forms, but the database in spreadsheet formatting (preferably in excel) that contains the data from the vehicle stop forms. According to past sunshine responses I have received from REJIS, SLMPD is a client of REJIS for whom REJIS has a SLMPD database of the Vehicle Stop data that is available in worksheet format. REJIS indicates that this database exists and is available.

The Department stated that it understood his request to be "for the data generated from the vehicle stop forms." The Department then informed Weeks in multiple email exchanges that it needed additional time to access the files stored with REJIS.

---

[2] REJIS was created in 1975 "to coordinate a regional database of criminal arrests and dispositions, so as to promote efficient law enforcement and administration of criminal justice." *State ex rel. Reg'l Just. Info. Serv. Comm'n v. Saitz*, 798 S.W.2d 705, 706 (Mo. banc 1990).

More than a month after Weeks filed his initial Sunshine Law request, he still had not received any documents from the Department, and his emails were not being answered. Weeks informed the Department that he would file a lawsuit if he did not receive the requested information within an additional week. Within the hour, the Department responded, stating, "There *is no existing record* of any 'file of a database containing data generated from vehicle stop forms' as you have requested." (Emphasis added). The Department then suggested it believed individual traffic analysis reports would be responsive to his request and the production of those records would cost $1,040.

Weeks filed suit against the City. Weeks's suit asked the circuit court to require the City to produce the records he requested and find that the City committed a knowing or purposeful violation of the Sunshine Law. During discovery, the City produced five files in .CSV format containing the databases maintained by REJIS. Weeks served the City with Requests for Admission under Rule 59.01, and the City admitted that each of these files were in the possession, custody, or control of the Department, and that it received this information automatically from REJIS without additional request. Weeks testified at trial that this was the precise information he had requested. The City explained that it believed it was not required to provide Weeks this information because it was not stored in Excel format.

Following a bench trial, the circuit court found that Weeks was seeking the creation of a new record, which the Sunshine Law does not require the City to create. The circuit court stated, "There was no evidence adduced at trial that the SLMPD maintains any 'vehicle stop' information in 'spreadsheet formatting' or any other organized form." Accordingly, the circuit court found there was no Sunshine Law violation. Weeks appeals.

3

**Discussion**

Weeks claims the circuit court erred in entering judgment in the City's favor because the evidence at trial demonstrated the City had the records that he requested, and the City withheld those records in contravention of the Sunshine Law. Weeks' argument claims the circuit court's judgment was against the weight of the evidence *and* erroneously declared and applied the law.

As in any court-tried case, this Court will affirm the circuit court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Sender v. City of St. Louis*, 681 S.W.3d 189, 193 (Mo. banc 2024) (quoting *Wilmoth v. Dir. of Revenue*, 669 S.W.3d 102, 108 (Mo. banc 2023)). "Statutory interpretation is an issue of law that this Court reviews *de novo*." *Crockett v. Polen*, 225 S.W.3d 419, 420 (Mo. banc 2007).

"The Sunshine Law presumes that public records are open to inspection unless such records contain information that clearly fits one of the exemptions in Section 610.021." *City of Byrnes Mill v. Limesand*, 599 S.W.3d 466, 471 (Mo. App. 2020). The Sunshine Law shall be construed liberally and any exception construed strictly to promote open government. Section 610.011.1.

The City admitted that the Department had the data records Weeks requested and that this information was stored electronically. The City's factual admission that the Department had the records Weeks requested is conclusive and demonstrates that the circuit court's finding there was no evidence that the Department maintained any of the requested information in any organized from was erroneous. Admissions under Rule 59.01 are conclusive as to the facts admitted.

The City was required to provide Weeks the requested records unless there is a "specific provision of law under which access is denied …." Section 610.023.4. The City's only

justification for not providing the records Weeks requested was that the records were not kept in the format requested by Weeks. The City's justification is, in my opinion, factually incorrect and legally irrelevant. It is factually incorrect because Weeks never demanded the records be transmitted to him exclusively in Excel formatting. During his initial request and subsequent communication with the Department, Weeks requested specific data from the Department. Specifically, he requested "the databases containing data generated from vehicle stop forms for 2014 through and including 2018." He then noted in his request that he understood that the data was stored in electronic format and asked for the databases created from the raw data. Weeks then noted Excel as an example of a worksheet formatting, not as an exclusive demand that his request *only* could be fulfilled by providing Excel files. In later correspondence with the Department, Weeks further clarified, "my request is not for the vehicle stop forms, but the database in spreadsheet formatting (*preferably in excel*) that contains the data from the vehicle stop forms." (Emphasis added). Weeks never requested the documents in any exclusive format.[3]

Further, the City's position that Weeks specifically demanded Excel spreadsheets is legally irrelevant to the City's statutory obligation to disclose public records on proper request. The Sunshine Law only requires a public body to "provide the records in the requested format, *if such format is available*." Section 610.023.3 (emphasis added). But it does not alleviate the public body's obligation to produce public information if it is kept in a different format. The significance of the request is the information requested, not the format in which it is stored. To hold otherwise, would incentivize any public body to store public records in an esoteric

---

[3] In any event, the difference between "excel format" and .CSV, in this instance, is largely semantic. Weeks testified that he opened the .CSV files he received from the Department in Microsoft Excel. He took no steps to convert the files other than opening them in Excel. Nothing in the Sunshine Law permits public bodies to withhold documents over semantics.

electronic format and deny disclosure based upon the public's failure to identify that exact format utilized. This holding undermines the public policy of open records, § 610.011.1, and the requirement that there must be a specific legal provision which allows the denial of a Sunshine Law request, § 610.023.4.

The City had the data that Weeks requested in an easily accessible electronic format. There is no exception to the Sunshine Law allowing documents to be closed because they are kept in a different electronic format than requested. Although the databases were kept with a .CSV extension, rather than an Excel extension, the Department was still required to disclose the information to Weeks because it had no statutory authority to close these records. *See* section 610.210 (listing records that could be exempted from the Sunshine Law).[4] Its failure to do so was a violation of the Sunshine Law.

### Conclusion

I would reverse the circuit court's judgment and remand the case to determine whether the Department violated the Sunshine Law knowingly or purposefully.

_____
John P. Torbitzky, Judge

---

[4] The City's offer to allow Weeks to purchase all of the PDF data did not comply with the Sunshine Law because "if the public governmental body keeps a record on a system capable of allowing the copying of electronic documents into other electronic documents, the public governmental body shall provide data to the public in such electronic format, if requested." Section 610.029.1.